No. 23-16031

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

AURORA REGINO,
*Plaintiff-Appellant*
v.
KELLY STALEY, Superintendent
*Defendant-Appellee*
and
CAITLIN DALBY; REBECCA KONKIN; TOM LANDO; EILEEN
ROBINSON; MATT TENNIS,
*Defendants.*

On Appeal from a Decision of the United States District Court for the
Eastern District of California
No. 2:23-cv-00032-JAM-DMC Honorable John A. Mendez

_____

***AMICI* BRIEF OF CALIFORNIA TEACHERS ASSOCIATION,
CALIFORNIA FEDERATION OF TEACHERS, CALIFORNIA
ASSOCIATION OF SCHOOL PSYCHOLOGISTS, CALIFORNIA
ASSOCIATION OF SCHOOL COUNSELORS, CALIFORNIA SCHOOL
NURSES ORGANIZATION, AND CALIFORNIA ASSOCIATION OF
SCHOOL SOCIAL WORKERS IN SUPPORT OF DEFENDANT-
APPELLEE AND URGING AFFIRMANCE**

_____

Laura P. Juran
Theresa C. Witherspoon
CALIFORNIA TEACHERS ASSOCIATION
1705 Murchison Drive
Burlingame, CA 94010
(650) 552-5440
ljuran@cta.org
twitherspoon@cta.org

Glenn Rothner
Rothner, Segall & Greenstone
510 South Marengo Avenue
Pasadena, CA 91101
(626) 796-7555
grothner@rsglabor.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

CORPORATE DISCLOSURE STATEMENT ......................................... iv

INTEREST OF *AMICI CURIAE* .............................................................1

INTRODUCTION ....................................................................................5

ARGUMENT ...........................................................................................6

   I.   As found by the District Court, parents do not have a constitutional right to be notified over the student's objection of a student's presentation of their gender identity at school....................................................................6

   II.   Allowing a student to socially transition at school is not medical treatment; it is an important student-sought support for transgender and gender non-conforming students. ........................................................................7

   III.   Educational Professionals encourage students to share their gender identity with parents, guardians and other trusted adults when it is safe to do so. ...12

   IV.   Educational Professionals' duty not to discriminate against students requires that they respect the names and pronouns of transgender or non-binary students under California law.....................................................................16

   V.   The policy advocated by Appellant would cause serious harm to Educational Professionals and their ability to form trusting relationships with students—a key component of student success. .................................18

   VI.   Appellant's chosen approach, if adopted, would impose burdensome and impossible to administer notification requirements on schools...................20

   VII.   CDE guidance and California law have been successfully applied for a decade. .............................................................................................21

CONCLUSION ......................................................................................23

CERTIFICATE OF COMPLIANCE ......................................................24

CERTIFICATE OF SERVICE ...............................................................25

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bostock v. Clayton Cty.* 590 U.S. ---, 140 S. Ct. 1731 (2020) ................................16

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019)................................10

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197 (9th Cir. 2005)................................6

*Koe v. Noggle,* No. 1:23-CV-2904-SEG, 2023 WL 5339281, at *6 (N.D. Ga. Aug. 20, 2023) ................................10

*Lamb v. Norwood*, 899 F.3d 1159 (10th Cir. 2018) ................................10

*Monroe v. Meeks*, 584 F. Supp. 3d 643 (S.D. Ill. 2022)................................10

*Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1191 (C.D. Cal. 2007) ................................20

*People of the State of Cal. v. Chino Valley Unified School Dist.*, CIV SB17301 (San Bernardino Sup. Ct. 2023.)................................17

**Statutes**

California Education Code Section 220................................16

California Education Code Section 221.5(f)................................8, 16

**Legislation**

California Assembly Bill 1266 (2013)................................ 13, 21

**Court Rules**

Federal Rules of Appellate Procedure 29(a)................................1

Federal Rule of Appellate Procedure 29(a)(2)................................4

# TABLE OF AUTHORITIES

## (continued)

Page

**Other Authorities**

American Psychological Association & National Association of School Psychologists. (2015). *Resolution on gender and sexual orientation diversity in children and adolescents in schools*.) ..........................................................15

California Department of Education ("CDE") Guidance on supporting transgender students, titled "School Success and Opportunity Act (Assembly Bill 1266) Frequently Asked Questions ..............................................................13

National Association of School Psychologists. (2014). *Safe schools for transgender and gender diverse students* [Position statement]. Bethesda, MD: Author. pp. 6-7, citing American Psychological Association. (2011). ...................7

National Association of School Psychologists (2017), *Safe and supportive schools for LGBTQ+ youth* (Position statement). Bethesda, MD: Author. ..........18

National Association of School Psychologists. (2022). *Safe and Supportive Schools for Transgender and Gender Diverse Students*. [Position Statement]....14

Robertson, Mandi, *Guest Comment: Identity Support*, Chico News & Review, July 25, 2023 ........................................................................................19

Russell, S.R., 63 *Journal of Adolescent Health* pp. 503-505 (2018) "Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth" ...............................................9

iii

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici* state that they are nonprofit corporations, and they do not have a parent corporation nor issue stock.

Date: January 9, 2024      /s/ *Theresa C. Witherspoon*
Attorneys for *Amici Curiae* Educational
Professionals

## INTEREST OF *AMICI CURIAE*

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, *Amici* California Teachers Association, California Federation of Teachers, California Association of School Psychologists, California Association of School Counselors, California Association of School Social Workers, and California School Nurses Organization (collectively "Educational Professionals") file this *amici curiae* brief. Counsel for *Amici* sought and received the consent of both Appellant and Appellee to the filing of this brief.

Founded in 1863, the California Teachers Association ("CTA") is a nonprofit labor organization representing 310,000 educational employees in California, including teachers, school psychologists, school nurses, and school counselors. Over 1,000 chapters of CTA represent members in collective bargaining with school districts in California. CTA is the state affiliate of the National Education Association. CTA's mission is to protect and promote the well-being of its members; to improve the conditions of teaching and learning; to advance the cause of free, universal, and quality public education for all students; to ensure that the human dignity and civil rights of all children, youth and adults are protected; and to secure a more just, equitable, and democratic society.

California Federation of Teachers ("CFT") is union of educators and classified professionals. CFT is a nonprofit labor organization comprising more

than 135 local unions across California, representing more than 120,000 employees working at every level of public and private education in the state. CFT's mission is to represent the interests of its members and the interests of the communities they serve through support for local collective bargaining, legislative advocacy, political action, and organizing. By these means, CFT helps its members to achieve dignity and respect in their workplace, decent lives for themselves and their families, and security in their retirement. The CFT exists to bring its members together to act on behalf of education workplace rights, academic freedom, legislative solutions to educational policy issues, and for full access to quality education for our students. CFT is the California affiliate of the American Federation of Teachers.

The California Association of School Psychologists ("CASP") is a nonprofit membership-based professional organization of over 2,000 School Psychologists and Licensed Educational Psychologists in California. CASP is affiliated with the National Association of School Psychologists ("NASP"). CASP's purpose is to empower school psychologists and licensed educational psychologists to strengthen educational systems and the students they serve. This mission is based on the core beliefs of educating families and community members, empowering educators, providing ethical and evidence-based practices resources, promoting the belief that every person has a right to discover their potential to learn in alignment

2

with diversity and inclusion, and striving to engage in strategic outreach to recruit and retain diverse school psychologists.

California Association of School Counselors ("CASC") is a nonprofit membership-based professional organization of 2,215 School Counselors in California. CASC's purpose is to promote excellence in the profession of school counseling by: leading and advancing the profession of school counseling in California; actively involving school counselors in the pursuit of students' academic achievement, college and career readiness, and mental health support, as well as equipping school counselors with the requisite knowledge, skills, connections, and resources to promote equity and access to high-quality education for the overall success of every student in California schools.

California Association of School Social Workers ("CASSW") is a nonprofit membership-based professional organization of 550 school social workers in California. CASSW is dedicated to promoting the professional development of School Social Workers to enhance the educational experience of students and their families. CASSW works to empower and equip school social workers to address systemic barriers in education and promote social justice, liberation, and well-being for students, families, and communities.

California School Nurses Organization ("CSNO") is a nonprofit membership based professional organization of 1,800 school nurses throughout California.

3

CSNO's mission is to ensure that school nurses optimize student health and enhance learning through a network distinguished by: facilitating grassroots efforts within regional sections; developing and providing professional learning opportunity; fostering the development of leaders; conducting research and using evidence based practice; providing standards of care; and advocating for school health services.

*Amici* and their members collectively share a strong interest in supporting LGBTQ+ students and using their professional expertise to create a safe, nondiscriminatory, and supportive learning environment for all students. *Amici*'s members teach, counsel, nurse, and otherwise support students in California's schools on a daily basis. Their members are deeply familiar with the best professional practices for supporting students in the educational environment, including LGBTQ+ students. *Amici* also have long and proud histories of promoting inclusive education and supporting legislation and other advocacy efforts intended to protect and advance the rights of LGBTQ+ students and employees.[1]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amici curiae* certify that no person or entity, other than *amici curiae*, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored the brief in whole or in part.

## INTRODUCTION

Educational Professionals file this brief in support of Appellee urging affirmance of the District Court's granting of the school District's Motion to Dismiss. Should this Court establish a new, expansive due process right to the forced disclosures sought by Appellant, significant harm would be done to the trusting relationships that school staff have with students – trust that is critical to work performed by the members of the *amici* organizations. To best support LGBTQ+ students, Educational Professionals must respect the parameters of a student-led process, where students are in fact encouraged to engage their parents or guardians and share information with them about their gender identity – in a manner and at a time when it is psychologically and physically safe for students, in accordance with the recommended best practices of Educational Professionals.

California has long successfully supported LGBTQ+ students and respected their rights to privacy and to non-discriminatory learning environments. The Chico Unified School District policy in question appropriately supports a safe and inclusive learning environment, and Plaintiff's constitutional challenge to that policy fails.

# ARGUMENT

**I.** **As found by the District Court, parents do not have a constitutional right to be notified over the student's objection of a student's presentation of their gender identity at school.**

Educational Professionals agree with the District Court's ruling that Appellant's Complaint did not state a cognizable substantive due process right to be affirmatively informed that the school District was respecting plaintiff's child's request to begin using a different name and pronoun at school. In the public school context, this Court has long held that schools have a broad right to determine how to best serve the needs of their students, and individual parents do not have veto power over all aspects of school policy. (*See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005) (parents do not have a fundamental right "to interfere with a public school's decision as to how it will provide information to its students or what information it will provide, in its classrooms or otherwise" with respect to survey addressing sex and sexuality.)) Rather than intruding into a parent's personal liberties, the District's policy – which fully conforms with longstanding legal guidance from the California Department of Education – *prevents* the government from inserting itself into personal family matters. The policy respects student privacy rights under the California Constitution, and it allows family members to discuss gender identity on their own terms when they choose to do so.

6

The facts as alleged indicate that the student simply requested to use a different name and pronoun; school staff supported the student in this request; and school staff honored the student's desire to not inform their parents. Those facts do not establish an impingement on a parent's fundamental right such that Appellant established a violation of a substantive due process right.

Educational Professionals also agree with the District Court's conclusion that plaintiff failed to state an actionable procedural due process claim or First Amendment claim. *Amici* do not specifically address or repeat the District Court's reasoning on those issues. *Amici* instead address false premises of Appellant's arguments and the harms that would be caused to both students and student-school staff relationships were Appellant's constitutional theory adopted.

## II. Allowing a student to socially transition at school is not medical treatment; it is an important student-sought support for transgender and gender non-conforming students.

Contrary to Appellant's assertions, social transitioning is not a medical treatment. While the process of generally changing gender expression from one gender to another is called "transition," "social transitioning" is the aspect of a person's transitioning that may include changes in clothing, grooming, pronouns, names, and identity documents. (National Association of School Psychologists. (2014). *Safe schools for transgender and gender diverse students* [Position statement]. Bethesda, MD: Author. pp. 6-7, citing American Psychological

7

Association. (2011). *Answers to your questions about transgender people, gender identity, and gender expression*. Washington, DC, available from http://www.apa.org/topics/lgbtq/transgender.pdf).  In schools, this typically occurs when a student requests to have their preferred gender identity or expression acknowledged, and those around them respect and support this request.  "Social transition" is a term distinguishable from "medical transition," the latter of which may include medical treatments such as hormone treatments and surgery.  (*Id*. at p. 7.)  Children, adolescents, and adults may undergo social transition at any time. (*Id*.)  In the school context, this may include the student asking to be referred to by their chosen name and pronouns; wearing clothing, hairstyles, and make-up consistent with their gender identity; and having access to sex-segregated programs and facilities consistent with their gender identity, such as sports teams and bathrooms, as required by California Education Code Section 221.5(f).

When a student requests to socially transition at school, the best practice is for a trained Educational Professional to meet with the student and ask them how they prefer to be treated in various contexts, allowing the student to determine what they believe will be safest and most comfortable for them.  Sometimes this will mean, for example, providing access to gender-neutral facilities.  The process should always be student-led.

Treating students in accordance with their gender identity is imperative to the overall psychological and physical well-being of students. One study showed transgender and gender non-conforming students experienced a 29% decrease in suicidal thoughts if they have just one place where they can comfortably be accepted as themselves and go by their preferred name. (Russell, S.R., 63 *Journal of Adolescent Health* pp. 503-505 (2018) "Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth"). For students exploring their gender identity, school can be that safe place; however, for students to feel comfortable sharing that information, students must know that Educational Professionals will not share that information with anyone over the student's objections. Having supportive professionals and policies in place that allow a student to socially transition safely at school is an important way to provide vital support to these students.

In an effort to shoehorn forced-outing of students into a constitutional due process right, Appellant argues, wrongly, that parents must always be informed if a student is socially transitioning at school because it constitutes "medical treatment." But allowing a student to socially transition is not medical treatment. Rather, it is a means of social support. Social transitioning at school may be recommended as part of a broader plan that includes medical treatment, but supporting a student socially in their gender identity is not itself medical treatment.

Just as encouraging students to engage in healthy eating habits and exercise may be a means of supporting the medical treatment of various health conditions, such encouragement does not in and of itself constitute a medical treatment about which a parent must be informed or give consent.

Appellant's assertions that various authorities have established that social transitioning is a medical or psychological treatment are not actually supported by the authorities to which she cites. For example, on page 33 of Appellant's Opening Brief, Appellant cites *Edmo v. Corizon, Inc*., 935 F.3d 757, 770 (9th Cir. 2019) and *Lamb v. Norwood*, 899 F.3d 1159, 1161 (10th Cir. 2018) for this proposition; however, in each case, the court only references "treatments," not specifically medical or psychological treatments, and clarifies that social transitioning is one way to support gender dysphoria. Appellant also cites *Koe v. Noggle*, No. 1:23-CV-2904-SEG, 2023 WL 5339281, at *6 (N.D. Ga. Aug. 20, 2023), and *Monroe v. Meeks*, 584 F. Supp.3d 643, 678 (S.D. Ill. 2022), but those decisions only state that elements of social transitioning can be included as *part* of a gender dysphoria treatment plan. None of these cases establish that social transitioning in and of itself is a medical or psychological treatment, but rather they demonstrate that it can be a part of supporting someone with gender dysphoria.

Appellant's concern that social transitioning is a drastic "medical" action is belied by the reality of working with transgender and gender non-conforming

10

youth, as social transitioning often happens incrementally – just as occurred in this case. A student requesting certain trusted adults to use a different name and pronoun is often an early step, when the student feels psychologically safe to explore their gender identity in the school context. Educational Professionals advise, and have consistently found, that it is optimal for a trusted adult at school to support a student-led process, which involves listening to the student first and foremost, and following the student's lead with respect to how their gender presentation should be supported at school.

Abiding by the student's requests with respect to social transitioning also allows a student to change their mind about their gender identity, should the student choose to do so. Educational Professionals providing that initial support for a student exploring their gender identity, even if the student asks that their parents not be informed, is a recommended best practice both to ensure the student knows that adults can be a supportive and trusted resource and to directly support the student's well-being.

The District Court recognized that the District policy is student-led and is not something that is *done to* students, but rather follows the student's lead. As the District Court correctly stated, the policy is "not proactive, but reactive; District staff are not directed to force students to adopt transgender identities or keep their identities secret from their parents. Instead, District staff are directed to affirm a

11

student's expressed identity and pronouns and disclose that information only to those the student wishes." (District Court Decision, p.10.) The Court further found that it was "indisputable" that under the District policy, the decision for a student to use a different name and/or pronoun is made by the student, not the District. (*Id*.) The District policy is thus consistent with the recommendations and best practices of Educational Professionals.

### III. Educational Professionals encourage students to share their gender identity with parents, guardians and other trusted adults when it is safe to do so.

Contrary to Appellant's gross mischaracterization of the District policy, Educational Professionals do not encourage or maintain "parental secrecy" policies. Educational Professionals recommend that as part of a process of supporting a student who "comes out" to an Educational Professional or who seeks support in their gender identity, Educational Professionals should discuss with the student how and when they can safely come out to their parent or guardian. Examples of this assistance include role playing the conversation that the student could have with their parent/guardian; encouraging the student to talk with their friends about role playing conversations with loved ones; brainstorming other family members to whom they can come out first who may be able to facilitate coming out to the parent/guardian; and offering to be part of a conversation between the parent/guardian and student.

This is, in fact, exactly what happened with Appellant's child. The student disclosed their gender identity to a school counselor—a member of *amici* California Association of School Counselors and California Teachers Association. The counselor discussed with the student whether anyone at home knew about their gender identity, but the student made clear that this was not something that, at the time, they believed anyone at home would accept. As part of supporting the student, the school counselor talked with the student about whether there was another adult family member with whom the student could speak first about their gender identity. The counselor offered to role play the coming out process with their mother, and she encouraged the student to role play the conversation with friends. She offered to facilitate a conversation between the student and the mother. Eventually, as a result of the role plays encouraged by the counselor, the student did disclose their gender identity to a grandmother, who, in turn, discussed her grandchild's gender identity with the parent-appellant. This incremental and discrete disclosure process occurred in large part *because* the school counselor was following best practices for Educational Professionals on encouraging the student to share their gender identity with their parents and other trusted family members.

This practice is also consistent with California Department of Education ("CDE") Guidance on supporting transgender students, titled "School Success and Opportunity Act (Assembly Bill 1266) Frequently Asked Questions."

(https://www.cde.ca.gov/re/di/eo/faqs.asp.)  FAQ No. 5 states: "The first and best option is always to engage in an open dialogue with the student and the student's parent or parents if applicable."  The guidance also recognizes, "A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home.  Revealing a student's gender identity or expression to others may compromise the student's safety."  (*Id.* at FAQ No. 6.)

Neither Chico nor other California school districts maintain a "secrecy policy" as mischaracterized by Appellant.  District policies, consistent with CDE guidance, are aimed at encouraging connection with parents regarding the student's gender identity to the fullest extent possible.  Many students do disclose their gender identity to a parent or guardian, but *amici* are concerned about the significant minority of highly vulnerable transgender and gender non-conforming students who may need additional time and support, or where school is the only place where they can feel safely supported.  "Within the home environment, some LGBTQ+ youth experience family rejection, which may include abuse, exclusion, being forced to leave home, and efforts to change a youth's sexual orientation or gender identity."  (National Association of School Psychologists. (2022). *Safe and Supportive Schools for Transgender and Gender Diverse Students*. [Position Statement]).  The National Association of School Psychologists ("NASP") ethical guidelines state that school psychologists must not reveal any "information about

14

the sexual orientation, gender identity, or transgender status of a student (including minors) … without the individual's permission."[2]  Moreover, NASP and the American Psychological Association "recommend schools develop policies that respect the right to privacy for students. . . with regard to . . . gender identity, or transgender status, and that clearly state that school personnel will not share information with anyone about the . . . gender identity. . . or transgender status of a student . . . without that individual's permission."  (American Psychological Association & National Association of School Psychologists. (2015). *Resolution on gender and sexual orientation diversity in children and adolescents in schools*.) The Chico District policy follows these best practices by encouraging parental involvement while appropriately allowing the student to assert privacy rights – and to protect their own safety and psychological health -- with respect to their gender identity.

---

[2] The NASP Standard I.2.5 Privacy Related to Sexual Orientation and Gender Identity and Expression, states: "School psychologists respect the right of privacy of students, parents, and colleagues with regard to sexual orientation, gender identity, or transgender status.  They do not share information about the sexual orientation, gender identity, or transgender status of a student (including minors), parent, or school employee with anyone without that individual's permission."

15

IV.    **Educational Professionals' duty not to discriminate against students requires that they respect the names and pronouns of transgender or non-binary students under California law.**

California law makes clear that students have the right to attend school free from discrimination, including discrimination based on gender identity. (*See* Cal. Education Code section 220: "No person shall be subjected to discrimination on the basis of . . .gender identity [or] gender expression . . . in any program or activity conducted by an educational institution. . . .") California also specifically requires that students "be permitted to participate in sex-segregated school programs and activities, including athletic teams and competitions, and use facilities consistent with his or her gender identity, irrespective of the gender listed on the pupil's records." (Cal. Education Code §221.5(f)). Educational Professionals are agents of schools and thus have a duty to follow these laws and to refrain from discriminating against transgender or gender non-conforming students. Treating a student in a manner inconsistent with their gender identity is a form of discrimination, as it evinces hostility and animus toward members of a protected group under state and federal law. (*See Bostock v. Clayton Cty.* 590 U.S. ---, 140 S. Ct. 1731, 1743 (2020) (discrimination based on transgender status is discrimination based on sex); Cal. Education Code §220 (prohibits discrimination based on gender identity and gender expression in educational institutions.))

16

A public school's discriminatory treatment of students based on gender identity also violates California's Equal Protection Clause. Indeed, a California Superior Court in San Bernardino County has enjoined another school district from implementing the very type of forced-outing policy that Appellant here attempts to turn into a constitutional mandate. (*See People of the State of Cal. v. Chino Valley Unified School Dist.*, CIV SB17301 (San Bernardino Sup. Ct. 2023.)) As the *Chino Valley* case recognizes, forcing schools to inform parents of a student's LGBTQ+ status when the student objects to that disclosure discriminates against those students; violates their equal protection rights; violates their privacy rights; and threatens serious harm to some of the most vulnerable students whom *amici* serve.

Appellant's arguments directly conflict with this well-established anti-discrimination law and should be rejected. Educational Professionals, who must abide by state anti-discrimination law, know firsthand that those legal obligations and the District's policy here provide critical protection to students and help ensure that schools are safe and supportive learning environments for all students.

**V.     The policy advocated by Appellant would cause serious harm to Educational Professionals and their ability to form trusting relationships with students—a key component of student success.**

Appellant's preferred policy not only would cause harm to vulnerable students, but it would also harm Educational Professionals who are tasked with the important job of educating and supporting students.

The American Psychological Association and the National Association of School Psychologists encourage school-based mental health professionals to serve as allies and advocates for gender and sexual orientation diverse children and adolescents in schools.  (National Association of School Psychologists (2017), *Safe and supportive schools for LGBTQ+ youth* (Position statement). Bethesda, MD: Author.)  *Amici*'s members take these responsibilities seriously and endeavor to ensure that schools are inclusive learning environments for all youth, including LGBTQ+ youth.

For students to feel comfortable coming to Educational Professionals for support, students must be able to trust those individuals.  If Educational Professionals charged with teaching and counseling students must affirmatively share information with a parent over the objection of a student, the result is an eroding of that trust.  When the trust between Educational Professionals and students breaks down, those employees can no longer competently perform their jobs because students will no longer come to them for assistance.  *Amici*'s

members regularly observe how students who trust them are more engaged in learning and more academically successful.

*Amici* have seen the harmful effects of policies consistent with Appellant's position that have been adopted in a small number of school districts in California, in contravention of the CDE guidance and state law. Where school boards have adopted policies requiring students' gender identity to be disclosed to parents over the student's objection and regardless of the student's safety or other concerns, not only are LGBTQ+ students silenced and verbally attacked, but Educational Professionals have been subjected to harmful homophobic and transphobic stereotypes. *Amici*'s members have been threatened at their homes, harassed on social media, and called horrible epithets at school board meetings for supporting LGBTQ+ students. The counselor whose name was plastered all over the complaint here faced such vitriol as a result of the false allegations and gross distortions in the complaint. (*See* Robertson, Mandi, *Guest Comment: Identity Support*, Chico News & Review, July 25, 2023,

https://chico.newsreview.com/2023/07/25/guest-comment-identity-support/.)

Further, compelling school employees to discriminate against students based on their gender identity (or any other protected characteristic) – and possibly to cause harm to those students by forcibly outing them – is demoralizing for school professionals and may contribute to an already severe shortage of teachers and

19

other education professionals. *Amici*'s members report increased frustration and distress over discriminatory forced-outing policies. Many Educational Professionals believe that such policies are political weapons that harm students and hinder their ability to perform their jobs.

Impeding Educational Professionals' work, including the critical work of building trusting relationships with students who may not have supportive home environments, is bad for kids and bad for the Educational Professionals who are charged with educating and supporting them.

## VI. Appellant's chosen approach, if adopted, would impose burdensome and impossible to administer notification requirements on schools.

Educational Professionals are privy to a variety of information about their students that does not ordinarily get reported to their parents. Even though parents may desire to know this information, schools regularly allow students to choose whether aspects of how they live their lives at school are shared with parents or others. Examples include pregnancy, condom distribution in high school, romantic relationships, styles of dress, library book usage, joining clubs, or wearing make-up. With many of these aspects, students have been found to have a right to privacy that prevents schools from sharing this information with parents. (*See* e.g. *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1191 (C.D. Cal. 2007) (student had right not to have her same-sex relationship at school disclosed to her parents)).

Appellant's asserted right to information about her child's gender expression at school violates student privacy rights and also has no workable limiting principle. Should a school be required to report to his parent if a boy wears nail polish or puts on make-up at school? If a student removes religious garb at school, must the educator notify the parent? If Alexandra asks to be called "Alex," does the school have to obtain the parent's permission? Given the amount of time that students spend in the school environment and the number of ways that students can choose to express themselves outside the view of their parents, it would be wholly unreasonable – and wholly burdensome -- to require schools to affirmatively report all such matters to parents. And the federal Constitution does not require it.

## VII. CDE guidance and California law have been successfully applied for a decade.

Educational Professionals have been successfully maintaining students' confidence with respect to their gender identity for many years, in accordance with California law and the guidance of the California Department of Education. Shortly after the passage of Assembly Bill 1266 in 2013, which protects students' right to access programs and facilities consistent with their gender identity, the CDE issued its guidance entitled "Frequently Asked Questions: School Success and Opportunity Act (Assembly Bill 1266)." This guidance specifies important concepts related to Educational Professionals working with transgender students, including:

- A transgender or gender nonconforming student may not express their gender identity openly in all contexts, including at home. Revealing a student's gender identity or expression to others may compromise the student's safety. Thus, preserving a student's privacy is of the utmost importance.

- [S]chools must consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family. With rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including not sharing that information with the student's parents.

These concepts, which help protect students from discrimination, have been followed and implemented as policy by schools throughout California with great success for many years. Only now, as the issue of transgender students has become the political issue *de jour,* are challenges like Appellant's being made to these policies. Appellant's challenge, disguised as a constitutional claim, is a harmful and unnecessary attack on LGBTQ+ individuals. Educational Professionals experience the challenges and risks faced by many LGBTQ+ students on a daily basis, and they have long seen that respecting their students' right to learn in a supportive and non-discriminatory environment is what best serves their students' needs.

## CONCLUSION

*Amici* strongly urge the Court to affirm the District Court's order granting

the Motion to Dismiss.

Dated:  January 9, 2024          */s/ Theresa C. Witherspoon*
                                 Theresa C. Witherspoon
                                 Attorneys for *Amici Curiae* Educational
                                 Professionals

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-16031

I am the attorney or self-represented party.

**This brief contains** 4,768 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

　　☐ it is a joint brief submitted by separately represented parties.
　　☐ a party or parties are filing a single brief in response to multiple briefs.
　　☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature /s/ Theresa C. Witherspoon　　Date January 9, 2024
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2024, I electronically filed the foregoing with the Clerk of Court using the ECF System, which will send notification of such filing to all counsel of record.

Dated: January 9, 2024

*/s/ Theresa C. Witherspoon*

Theresa C. Witherspoon
Attorneys for *Amici Curiae* Educational
Professionals