**No. 23-16031**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AURORA REGINO,

*Plaintiff-Appellant*

v.

Superintendent KELLY STALEY, in her official capacity,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the Eastern District of California No. 2:23-cv-00032-JAM-DMC Hon. John A. Mendez

_____

## APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Joshua W. Dixon
CENTER FOR AMERICAN LIBERTY
PO Box 200942
Pittsburgh, PA 15251-0942
(703) 687-6212
jdixon@libertycenter.org

*Attorneys for Appellant*
AURORA REGINO

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................ i

TABLE OF AUTHORITIES .................................................... ii

INTRODUCTION ...................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................5

ARGUMENT ...........................................................................8

   I.   THE COURT SHOULD DECIDE THE QUESTION PRESENTED BY THIS APPEAL ...........................................................8

   II.  THE PANEL'S DISCUSSION OF *GLUCKSBERG* WAS ERRONEOUS .13

CONCLUSION ......................................................................17

EXHIBIT A ..........................................................................19

EXHIBIT B ..........................................................................52

# TABLE OF CASES

**Cases**

*Bd. of Dir. v. Rotary Club*,
    481 U.S. 537 (1987) ........................................................................ 14

*Bonta v. Chino Valley Unified Sch. Dist.*,
    CIV-SB-2317301 (Cal. Sup. Ct. 2023) ........................................... 13

*C.N. v. Ridgewood Bd. of Educ.*,
    430 F.3d 159 (3d Cir. 2005) ........................................................... 16

*Cal. First Amend. Coal. v. Woodford*,
    299 F.3d 868 (9th Cir. 2002) .......................................................... 14

*Fields v. Palmdale Sch. Dist.*,
    427 F.3d 1197, 1204 (9th Cir. 2005),
    *opinion amended on denial of reh'g sub nom.*
    447 F.3d 1187 (9th Cir. 2006) ........................................................ 15

*Foote v. Ludlow Sch. Comm.*,
    128 F.4th 336 (1st Cir. 2025) ...................................................... 9, 16

*Keates v. Koile*,
    883 F.3d 1228 (9th Cir. 2018) .................................................... 14, 16

*Khachatryan v. Blinken*,
    4 F.4th 841 (9th Cir. 2021) ............................................................ 16

*Littlejohn v. Sch. Bd. of Leon Cnty.*,
    No. 23-10385,
    2025 WL 785143 (11th Cir. Mar. 12, 2025) .................................... 9

*Marsh v. Cnty. of San Diego*,
    680 F.3d 1148 (9th Cir. 2012) ........................................................ 16

*Meyer v. Nebraska*,
    262 U.S. 390 (1923) ........................................................................ 14

*Mueller v. Auker*,
    576 F.3d 979 (9th Cir. 2009) .......................................................... 12

*Mueller v. Auker*,
    700 F.3d 1180 (9th Cir. 2012) ........................................................ 12

*Obergefell v. Hodges*,
    576 U.S. 644 (2015) ........................................................................ 15

*Parham v. J.R.*,
    442 U.S. 584 (1979) ........................................................... 15

*Regino v. Staley*,
    No. 23-16031, Slip. Op. (9th Cir. Apr. 4, 2025) ...................... *passim*

*Shirk v. U.S. ex rel. Dep't of Interior*,
    773 F.3d 999 (9th Cir. 2014) .............................................. 8

*Soldal v. Cook Cnty.*,
    506 U.S. 56 (1992) ........................................................... 14

*Troxel v. Granville*,
    530 U.S. 57 (2000) ........................................................... 15

*United States v. Rahimi*,
    602 U.S. 680 (2024) ......................................................... 16

*Wallis v. Spencer*,
    202 F.3d 1126 (2000) .................................................. 12, 15

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ....................................................... *passim*

*Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 680 F.
    Supp. 3d 1250, 1277 (D. Wyo. 2023)….. ............................... 11

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ......................................................... 14

**INTRODUCTION**

This case involves a question of exceptional importance, both in this Circuit and nationwide: Do parents have the right under the United States Constitution to consent—or in the alternative, to notice—when their children are "socially transitioned" at public school?[1] School districts throughout this Circuit and across the country have adopted policies under which schools are authorizing children to make this important life decision for themselves, without regard to their parents' consent and without even notifying their parents. As a testament to the importance of this question, nearly every state Attorney General in the country joined an amicus brief in this case, on one side or the other. In addition, parents have filed dozens of similar cases across the country, and the First and Eleventh Circuits just recently weighed in on the question. This case presents the perfect vehicle for this Court to roll up its sleeves and do the same.

Although this case is before the Court on the appeal of a Rule 12(b)(6) dismissal, the panel didn't decide the question. Instead, it vacated and remanded for the district court to consider the question again. But this is a pure legal question,

---

[1] Social transitioning is the affirmative act of referring to an individual by a new name and pronouns associated with their transgender identity. In the school setting, it occurs when schools enforce policies requiring others in the school environment—administrators, staff, and other students—to refer to a transgender-identifying child by a new name and pronouns of his or her choosing associated with that identity, thereby creating a putatively therapeutic environment for the child at school.

which the parties consistently presented and extensively briefed in both the district court and this Court, and there was no good reason for the panel to avoid deciding it. Considering the grave importance of this question in the lives of Ms. Regino and her children—not to mention the other parents and children in the District, the State of California, and throughout this Circuit—it is imperative that the Court step in now.

As Ms. Regino's Complaint alleges, social transitioning is a form of psychological treatment. Its purpose is to alleviate the psychological distress that can be caused by having a mismatched body and gender identity by creating a putatively therapeutic environment in which the individual's transgender identity is affirmed. But in children, a social transition is no mere benign intervention, and from a psychological standpoint, not all children who ask to be socially transitioned should be. In fact, most children who develop a transgender identity will lose that identity— or "desist"—before adulthood. When a child is socially transitioned, however, the rate of desistence plummets due to the psychological effects on the child of inhabiting that new gender identity. Thus, by socially transitioning children, schools are performing a significant psychological intervention that risks causing their transgender identity to persist into adulthood.

Moreover, most children who undergo a social transition later go on to transition medically—through puberty blockers, cross-sex hormones, and, for some,

sex-reassignment surgeries. Because of the close correlation between a social transition and a medical transition, the risks associated with these medical procedures must be considered before a child is socially transitioned. Yet schools are not advising children of any of these risks before socially transitioning them, nor would children be competent to balance these risks against the potential benefits of a social transition if they knew them.

Because socially transitioning children can have such a significant impact on their life course, parents have the right to consent—or in the alternative, to notice— when the state seeks to socially transition their children. And while parents' rights are subject to the state's *parens patriae* interest in safeguarding children's well-being, the District's Parental Secrecy Policy neither implicates nor rationally furthers that interest. Instead, the Policy requires the social transition of *all* children who ask for it, regardless of the specific facts in each individual child's case. And unless the child says otherwise, the Policy generally requires District personnel to conceal the transition from the student's parents. This paradigm impermissibly puts children—who could be as young as five years old—in the driver's seat of their lives despite the fact they lack the maturity, judgment, and experience to reach the pedals.

In California alone, the vast majority of school districts have policies similar to the District's Parental Secrecy Policy. Indeed, the California Attorney General is suing school districts that adopt policies requiring parental *notification* when their

children are socially transitioned at school. This systematic and widespread violation of parents' rights—to the psychological detriment of their children—cries out for resolution by this Court.

Finally, while the panel side-stepped the question at the heart of this appeal, it did give the district court guidance in dicta on how to evaluate the case on remand. Unfortunately, that dicta was wrong. First, Ms. Regino asserts both First Amendment and due process claims, and contrary to the panel's suggestion, *Washington v. Glucksberg*'s heightened test doesn't apply to First Amendment claims. Instead, the question is whether Ms. Regino has plausibly alleged a right that is encompassed within the First Amendment.

Second, *Glucksberg*'s heightened test doesn't apply to Ms. Regino's substantive due process claims either. While *Glucksberg* applies to *new* substantive due process rights, the parental right isn't *new*. Indeed, the Supreme Court first recognized that the Due Process Clause protects the parental right over a century ago. Accordingly, the question is whether Ms. Regino has plausibly alleged a right that is encompassed within the precedent and principles that undergird that right.

Applying the correct standard, Ms. Regino has plausibly alleged that the Parental Secrecy Policy violates her First Amendment and substantive due process rights to consent—or in the alternative, to notice—when the state seeks to provide healthcare treatment to her children, when the state seeks to make an important

decision in the lives of her children, and when the state exerts undue influence into the integrity of her family by socially transitioning her children at school.

The Court should GRANT this petition, REVERSE the district court's Order and Judgment dismissing the Complaint, and REMAND to the district court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Regino's Complaint contains detailed allegations regarding the purpose and effect of social transitioning in children. ER58–62. A summary follows.

Gender dysphoria is a psychiatric condition in which the mismatch in a person's transgender identity and sex produces significant psychological distress. ER58 ¶ 29. There are several approaches to the treatment of gender dysphoria and related conditions in children. ER59 ¶¶ 35–40. One approach—the "affirmation model"—holds that a child's assertion of a transgender identity should be accepted as decisive and permanent and that the best way to treat the child is through the affirmation of that identity. ER59 ¶¶ 38–40.

Social transitioning is a primary pillar of the affirmation model. ER59 ¶ 40. Its purpose is to alleviate the child's psychological distress through the creation of a putatively therapeutic environment in which the child's transgender identity is affirmed. *Id.*

Social transitioning is a significant form of psychological treatment in children. ER54 ¶ 5; ER53 ¶ 2. And like other forms of treatment, it has risks. Absent social transitioning, many transgender-identifying children will desist on their own. ER59 ¶¶ 33–34. With social transitioning, however, it is significantly more likely that a child's transgender identity will persist into adulthood. ER60 ¶ 43. In addition, most children who are socially transitioned go on to receive affirmative medical care in the form of puberty blockers and cross-sex hormones (at least), the risks of which are significant and include bone weakness, depression, and sterility. ER60 ¶ 44. Before socially transitioning a child, these risks must be considered. ER60 ¶¶ 44, 46.

Schools that socially transition children without parental consent violate this command. ER61 ¶¶ 47, 49–50. Moreover, socially transitioning children in secret from their parents inflicts unique psychological harm on children, driving a wedge in the family just when the parents are needed most. ER61 ¶¶ 48, 50.

Ms. Regino has two children in the Chico Unified School District. ER56. Under the District's Parental Secrecy Policy, ER94–100, if a child informs District staff that he or she wants to be socially transitioned at school, the District requires everyone in the school environment—administrators, teachers, and students—to refer to the child by their new name and pronouns. And unless the child says otherwise, District staff must conceal the transition from the child's parents, except when disclosure is either required by law or "necessary," in the District's sole

6

judgment, for the child's "physical or mental well-being." ER99. The Policy does not contain an exception from this prohibition when parents directly ask District staff whether their children are being socially transitioned.

Ms. Regino filed this case on January 6, 2023. ECF 1. She alleges that the Policy violates her First Amendment rights to family association and integrity, her substantive due process parental rights, and her procedural due process rights to notice and an opportunity to be heard before her children are socially transitioned, all both facially and as applied. ER70–80. She seeks prospective relief. ER81.

On July 11, 2023, the district court dismissed the Complaint under Rule 12(b)(6). ER4–23. Ms. Regino appealed, and on May 9, 2024, the panel heard oral argument. On April 4, 2025, the panel vacated the dismissal, holding that the district court erred by importing the "clearly established" standard applicable in qualified immunity questions into fundamental rights determinations. *Regino v. Staley*, No. 23-16031, Slip. Op. at 20 (9th Cir. Apr. 4, 2025), attached as Exhibit A. The panel, however, didn't address the question of whether the Complaint stated a claim. Rather, asserting that the parties' respective positions had changed between briefing and argument, the panel remanded for the district court to re-evaluate the parties "revamped arguments" in the first instance. *Id.* at 23.

The panel also provided the district court guideposts to aid its analysis on remand. *Id.* at 24–28. As relevant here, while the panel stated that it was "not

separately address[ing Ms. Regino's] First Amendment claims" to family association and integrity, *id.* at 18 n.6., it nevertheless suggested that those claims were subject to the heightened test set forth in *Glucksberg*, *id.* at 24–28. Further, even though the Supreme Court first recognized the substantive due process parental right over a century ago, the panel concluded that Ms. Regino was required to demonstrate anew that the right was implicated here under the *Glucksberg* test. *Id.* at 24–28 and n.7.

The Court—whether the panel or the en banc Court—should revisit this case and resolve the legal questions presented, holding that Ms. Regino's Complaint states plausible claims.

## ARGUMENT

## I. THE COURT SHOULD DECIDE THE QUESTION PRESENTED BY THIS APPEAL

Respectfully, the panel ducked the important question presented by this appeal without adequate justification. True, it is "normally inappropriate" for this Court to address arguments not addressed by the district court that have "been briefed only cursorily." *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014). But that isn't the case here: the district court thoroughly (albeit incorrectly) addressed the legal issues involved, ER4–23, and the parties briefed their respective positions extensively, both in the district court and this Court.

While the district court plainly erred in importing the qualified immunity "clearly established" legal standard into fundamental rights determinations, the district court closely evaluated Ms. Regino's allegations and found them to be "conclusory." ER13, 21. That was wrong too, but there's no reason to think the district court will conclude otherwise on remand. Accordingly, a remand, followed by another dismissal, followed by another appeal, will put this case right back before this Court a year or two from now. It's possible the Supreme Court will have granted certiorari in one of the many similar pending cases around the country by then, *see, e.g.*, *Littlejohn v. Sch. Bd. of Leon Cnty.*, No. 23-10385, 2025 WL 785143 (11th Cir. Mar. 12, 2025); *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336 (1st Cir. 2025),[2] but that possibility isn't an adequate reason to delay. In fact, this Court should decide the question now *precisely because* it is a matter of grave national importance.

Moreover, the panel's asserted justifications for dodging the question are without merit. The panel asserted that Ms. Regino's "characterization of her asserted fundamental rights has shifted over the course of this litigation." Slip Op. at 21. But that's wrong. Before this Court, as before the district court, Ms. Regino argued that the Parental Secrecy Policy's requirement that the District socially transition her

---

[2] Due to word-count restraints, Ms. Regino lists only recent Circuit Court decisions, both which were decided in the past two months.

children without obtaining her consent—or in the alternative, without providing her

notice—violated her fundamental constitutional rights in three ways:

- ***First,*** social transitioning is a form of psychological treatment, and the Policy violates Ms. Regino's right to consent when the state performs healthcare treatment on her children. Regino Op. Br. at 17–18; *see also* Regino Opp'n to District Mot. to Dismiss (ECF 52) at 3–4, attached hereto as Exhibit B.

- ***Second,*** even if social transitioning were not psychological treatment, the Policy violates Ms. Regino's right to consent when the state makes the important parental decision of whether to socially transition a child. Regino Op. Br. at 18–21; *see also* Regino Opp'n to District Mot. to Dismiss at 4–5.

- ***Third,*** even if social transitioning were not psychological treatment, the Policy's requirement that schools socially transition children without parental consent constitutes an undue influence with Ms. Regino's right to family association and integrity. Regino Op. Br. at 21–22; *see also* Regino Opp'n to District Mot. to Dismiss at 5–6.

Ms. Regino made these arguments below, she made them to this Court, and she will

make them again on remand. Accordingly, a remand will serve no purpose and will

only delay resolution of this matter further.

The panel also asserted that Ms. Regino's argument changed between briefing

and oral argument. Specifically, the panel asserted that Ms. Regino argued in her

briefing that "schools have an affirmative obligation to notify parents *about their

children's preferred gender identity*" if children merely inform school staff that they

have a transgender identity. Slip Op. at 21–22 (emphasis added). According to the

panel, this meant that Ms. Regino's position in briefing was that schools had a duty

to disclose to parents all manner of information that their children might have told their "counselor or therapist." *Id*. But Ms. Regino has *never* made such an argument. Instead, Ms. Regino's position has consistently been that the District's duty to obtain parents' consent is triggered only when the school *actually socially transitions their children*. In her Opening Brief in this Court, Ms. Regino could not have been clearer:

> Ms. Regino does not assert that the District must inform her if it merely has a suspicion—or even direct knowledge—that her children are asserting a transgender identity (or, for that matter, *any* identity or orientation) . . . . Rather, Ms. Regino asserts only that the District may not take *affirmative steps* to socially transition her children . . . without first obtaining her consent. The District violates Ms. Regino's parental rights when *it* takes affirmative steps to socially transition [her] children without her consent . . . .

Regino Op. Br. at 24 (emphases in original); *see also* Regino Opp'n to District Mot. to Dismiss at 6 (arguing similar). Ms. Regino's position has remained—and will remain—the same: subject to the state's *parens patriae* authority (more on that below), schools are required to obtain parents' consent before socially transitioning their children at school. In the alternative, schools must provide parental notice when socially transitioning their children at school, which includes the obligation not to lie to or deceive parents in response to a direct question regarding whether their children are being socially transitioned. *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 680 F. Supp. 3d 1250, 1277 (D. Wyo. 2023).

The panel also claimed that Ms. Regino argued in her briefing that "parental rights are nearly unlimited." Slip Op. at 26. But that's wrong too. As Ms. Regino

explained in her briefing, the parental right is subject to the state's *parens patriae* authority in securing the well-being of children in the appropriate case:

> While parents have the "ultimate authority" over their children's healthcare *vis-à-vis their children*, *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000), parental control is "not absolute" *vis-à-vis the state*, *Mueller v. Auker*, 576 F.3d 979, 995 (9th Cir. 2009) ("*Mueller I*"). Exercising its *parens patriae* authority, the state may perform healthcare treatment on children without parental consent when the child is "subject to . . . apparent danger or harm." *Mueller v. Auker*, 700 F.3d 1180, 1187 (9th Cir. 2012) ("*Mueller II*").

Regino Reply Br. at 5 (emphases in original). As Ms. Regino pointed out, however, the Policy "does not require the District to find [that] children are 'subject to . . . apparent danger or harm'" before socially transitioning them. *Id.* at 5–6 (cleaned up). Instead, the Policy "authorizes the District to socially transition children . . . simply because they ask for it." *Id.* Accordingly, the Policy isn't a valid exercise of the state's *parens patriae* authority.

The panel also asserted that the District's "justifications" for the Policy had shifted too. Slip Op. at 23. But that's also wrong. The District hasn't waivered: its position has consistently been that children—regardless of their age—have an informational privacy right to keep the fact they are being socially transitioned at school secret from their parents. District Resp. Br. at 26–29. The District's statement at oral argument that the Policy authorizes "adult surrogate review," Slip. Op. at 23, simply acknowledges that District staff must ultimately make the judgment whether parental disclosure is "necessary" under the terms of the Policy. ER99. That

acknowledgment doesn't make the Policy any less unconstitutional, but it has been the District's position from the start.

Finally, while nothing is to be gained by remand, much will be lost. Ms. Regino and her children—like other families of the 12,000 schoolchildren in the District and the millions of families throughout the State of California and in this Circuit who are subject to parental secrecy policies—will continue to be subject to the harm these policies inflict. ER56 ¶ 18; District Resp. Br. at 10 (noting that the vast majority of schools in California have adopted parental secrecy policies). Indeed, the California Attorney General is bringing enforcement actions under California law against school districts that enact policies requiring parental notification when schools socially transition children. *See, e.g., Bonta v. Chino Valley Unified Sch. Dist.*, CIV-SB-2317301 (Cal. Sup. Ct. 2023). Considering the harm to families these policies are causing, it's past time for this Court to step in.

## II.    THE PANEL'S DISCUSSION OF *GLUCKSBERG* WAS ERRONEOUS

While the panel's guideposts to the district court are dicta, they nevertheless contain two significant errors that must be corrected.

First, the panel erred in suggesting that Ms. Regino's First Amendment claims are subject to *Glucksberg*'s heightened test. Slip Op. at 18 n.6, 24–28. As this Court has held, the right to family association and integrity arises under the First Amendment (as well as the Fourteenth) and is incorporated against the states under

the Fourteenth Amendment. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018); *see also Bd. of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987) (observing that right to family association arises under the First Amendment). But *Glucksberg*'s heightened test applies only to claims of new *substantive due process* rights, not *First Amendment* rights. 521 U.S. at 710. Instead, the question for purposes of Ms. Regino's First Amendment claims is whether the right she asserts is "encompassed within" the First Amendment. *Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 874 (9th Cir. 2002). *See also Soldal v. Cook Cnty.*, 506 U.S. 56, 70 (1992) (noting that courts must evaluate plaintiff's claim under the more "explicit textual source of constitutional protection" before evaluating plaintiff's "substantive due process" claim (cleaned up)).

Second, the panel also erred in concluding that *Glucksberg*'s heightened test applied to Ms. Regino's substantive due process claims. Slip Op. at 22 n.7 and 24–28. While the panel correctly noted that *Glucksberg* applies to "new*"* substantive due process rights, *id.* at 17, at the parental right isn't *new*. Indeed, the Supreme Court first held the substantive Due Process Clause protects parents' rights over a century ago. *See Meyer v. Nebraska*, 262 U.S. 390, 402 (1923); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) (noting that parental right is "established beyond debate as an enduring American tradition"). And in *Parham v. J.R.*, the Supreme Court specifically noted that parents have the right to control their children's

"medical care [and] treatment." 442 U.S. 584, 603 (1979); *see also Wallis*, 202 F.3d at 1141–42 (holding that parents have the right "to make important medical decisions for their children").

Accordingly, parents aren't required to make the heightened showings set forth in *Glucksberg* for every new type of healthcare treatment the state seeks to perform on their children, be it a cochlear implant, the administration of ADHD medication, hypnotherapy, or any other new type of treatment developed in the future. Instead, the question is simply whether the treatment at issue is sufficiently significant in the life of the child that it is "encompassed within" the principles that undergird the parental right. *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1204 (9th Cir. 2005), *opinion amended on denial of reh'g sub nom. Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187 (9th Cir. 2006); *see also Obergefell v. Hodges*, 576 U.S. 644, 671 (2015) (noting that question was not whether the Court should create a "new . . . right to same-sex marriage" but whether the right to same-sex marriage falls within "the right to marry in its comprehensive sense"); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (plurality op.) (concluding that statute impairing parental decision to determine child visitation infringed parental right without conducting *Glucksberg* analysis); *id.* at 77–78 (same) (Souter, J., concurring); *id.* at 80 (same) (Thomas, J., concurring); *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (asking whether parent's asserted right at issue "flows from" parents'

preexisting right); *Foote*, 128 F.4th at 348 (asking whether parents' asserted right "fell within" scope of preexisting right). *Accord Khachatryan v. Blinken*, 4 F.4th 841, 856 (9th Cir. 2021) (concluding that *Glucksberg* applies to asserted rights between "parent and an *adult child*" (emphasis added)).

Moreover, even if social transitioning weren't a form of psychological treatment (and Ms. Regino has plausibly alleged that it is), the analysis would be similar. In that situation, the question would be whether the right Ms. Regino asserts is sufficiently important in the lives of her children that it goes to the "heart of parental decisionmaking," *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005), or constitutes "unwarranted state interference" in her relationship with her children, *Keates*, 883 F.3d at 1235, under the principles established by preexisting parental-rights case law.

Either way, to state a substantive due process claim, Ms. Regino isn't required to demonstrate anew that the parental right exists under *Glucksberg*'s heightened standard. Indeed, requiring her to make such a showing would impermissibly "trap[ the constitution] in amber." *United States v. Rahimi*, 602 U.S. 680, 691 (2024). And applying the correct standard, Ms. Regino's Complaint plausibly alleges that social transitioning is a sufficiently significant event in children's lives that it falls within the scope of the parental right, whether social transitioning is conceptualized as a

form of healthcare treatment, a significant decision in the child's life, or a component of family association and integrity.

Finally, for the reasons set forth in Ms. Regino's briefing, even if she were required to make the heightened showing required by *Glucksberg*, she has done so. For time immemorial, parents—not children, and not the state—have had the power to give their children names as part of their general parental authority. Based on our common-law principles and traditions as enshrined in the constitution, it beggars belief to think that the founding (or second founding) generation would have thought public schools could socially transition children without obtaining their parents' consent—or in the alternative, providing them notice.

\* \* \*

At this stage of the litigation, Ms. Regino is required only to allege plausible claims. Her Complaint satisfies that lenient standard.

## CONCLUSION

The Court should GRANT this petition, REVERSE the district court's Order and Judgment dismissing her Complaint, and REMAND to the district court for further proceedings.

April 18, 2025                      Respectfully submitted,


                                    By: */s/Joshua W. Dixon*
                                    Joshua W. Dixon
                                    Eric A. Sell
                                    CENTER FOR AMERICAN LIBERTY
                                    PO Box 200942
                                    Pittsburgh, PA 15251-0942
                                    jdixon@libertycenter.org

                                    *Attorneys for Appellant*
                                    AURORA REGINO

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AURORA REGINO, | No. 23-16031 |
| *Plaintiff-Appellant*, | D.C. No. 2:23-cv-00032-JAM-DMC |
| v. | |
| KELLY STALEY, Superintendent, | |
| *Defendant-Appellee*, | OPINION |
| and | |
| CAITLIN DALBY; REBECCA KONKIN; TOM LANDO; EILEEN ROBINSON; MATT TENNIS, | |
| *Defendants*. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted May 9, 2024
Pasadena, California

Filed April 4, 2025

Before:  Kim McLane Wardlaw, Morgan Christen, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Christen

---

## SUMMARY[*]

---

### Due Process

The panel vacated the district court's dismissal of a complaint brought pursuant to 42 U.S.C. § 1983 by Aurora Regino, who challenged a Chico Unified School District policy under which the District began using Regino's child's new preferred name and pronoun without informing her.

Regino, raising facial and as-applied challenges, alleged that enforcement of the District's policy deprived her of her rights to both substantive and procedural due process.  The district court dismissed the complaint on the basis that Regino failed to allege the existence of a fundamental right that was clearly established in existing precedent.

The panel held that the district court applied erroneous legal standards to the substantive and procedural due process claims.  Addressing the as-applied substantive due process claim, the panel held that this court has never held that a plaintiff asserting a substantive due process claim must show that existing precedent clearly establishes the asserted fundamental right.  Rather, the critical inquiry is whether an

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

asserted fundamental right is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed. The panel declined to undertake the proper analysis in the first instance because the parties failed to articulate the scope of their respective claims and defenses consistently during litigation. The panel instructed the district court on remand to adopt a narrow definition of the interest at stake, carefully parse the District policy's terms, and apply existing precedent, which recognizes that the right of parents to make decisions concerning the care, custody and control of children is not unbounded.

Addressing Regino's as-applied procedural due process claim, the panel held that Regino need not have identified a fundamental right to establish a violation of her procedural due process rights. Rather, procedural due process protects all liberty interests that are derived from state law or from the Due Process Clause itself. The panel instructed the district court on remand to consider whether Regino adequately alleged the deprivation of a liberty interest, regardless of whether that interest is deemed fundamental.

Addressing Regino's facial claims, the panel noted that the district court did not address the distinction between facial and as-applied challenges. Because the district court erred in its analysis of Regino's as-applied claims, its analysis of Regino's facial claims was flawed. The panel therefore vacated the district court's dismissal and remanded.

## COUNSEL

Joshua W. Dixon (argued) and Eric A. Sell, Center for American Liberty, Mount Airy, Maryland; Harmeet K. Dhillon, Dhillon Law Group Inc., San Francisco, California; for Plaintiff-Appellant.

Jimmie E. Johnson (argued), Brian A. Duus, and Louis Leone, Leone Alberts & Duus APC, Corncord, California, for Defendant-Appellee.

Julie Veroff (argued), Deputy Solicitor General; Brian Bilford and Delbert Tran, Deputy Attorneys General; Laura Faer, Supervising Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, California Department of Justice, San Francisco, California; Philip J. Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; William Tong, Connecticut Attorney General, Office of the Connecticut Attorney General, Hartford, Connecticut; Brian L. Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney General, Washington, D.C.; Anne E. Lopez, Hawai'i Attorney General, Office of the Hawai'i Attorney General, Honolulu, Hawai'i; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Andrea J. Campbell, Commonwealth of Massachusetts Attorney General, Office of the Commonwealth of Massachusetts Attorney General, Boston, Massachusetts; Keith Ellison, Minnesota Attorney General, Office of the

Minnesota Attorney General, St. Paul, Minnesota; Matthew J. Platkin, New Jersey Attorney General, Office of the New Jersey Attorney General, Trenton, New Jersey; Letitia James, New York Attorney General; Office of the New York Attorney General, New York, New York; Ellen F. Rosenblum, Oregon Attorney General, Office of the Oregon Attorney General, Salem, Oregon; Peter F. Neronha, Rhode Island Attorney General, Office of the Rhode Island Attorney General, Providence, Rhode Island; Charity R. Clark, Vermont Attorney General, Office of the Vermont Attorney General, Montpelier, Vermont; Robert W. Ferguson, Washington Attorney General, Office of the Washington Attorney General, Olympia, Washington; for Amici Curiae State(s) of California, Colorado, Connecticut, District of Columbia, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington.

Peter M. Torstensen Jr., Deputy Solicitor General; Christian B. Corrigan, Solicitor General; Austin Knudsen, Montana Attorney General; Montana Department of Justice, Helena, Montana; Steve Marshall, Alabama Attorney General, Office of the Alabama Attorney General, Montgomery, Alabama; Treg Taylor, Alaska Attorney General, Office of the Alaska Attorney General, Fairbanks, Alaska; Tim Griffin, Arkansas Attorney General, Office of the Arkansas Attorney General, Little Rock, Arkansas; Ashley Moody, Florida Attorney General, Office of the Florida Attorney General, Tallahassee, Florida; Christopher M. Carr, Georgia Attorney General, Office of the Georgia Attorney General, Atlanta, Georgia; Raul R. Labrador, Idaho Attorney General, Office of the Idaho Attorney General, Boise, Idaho; Theodore E. Rokita, Indiana Attorney General; Office of the Indiana Attorney General, Indianapolis, Indiana; Brenna

Bird, Iowa Attorney General, Office of the Iowa Attorney
General, Des Moines, Iowa; Kris Kobach, Kansas Attorney
General, Office of the Kansas Attorney General, Topeka,
Kansas; Jeff Landry, Louisiana Attorney General, Office of
the Louisiana Attorney General, Baton Rouge, Louisiana;
Lynn Fitch, Mississippi Attorney General, Office of the
Mississippi Attorney General, Jackson, Mississippi; Andrew
Bailey, Missouri Attorney General, Office of the Missouri
Attorney General, Jefferson City, Missouri; Michael T.
Hilgers, Nebraska Attorney General, Office of the Nebraska
Attorney General, Lincoln, Nebraska; Drew H. Wrigley,
North Dakota Attorney General, Office of the North Dakota
Attorney General, Bismarck, North Dakota; Dave Yost,
Ohio Attorney General, Office of the Ohio Attorney
General, Columbus, Ohio; Gentner F. Drummond,
Oklahoma Attorney General, Office of the Oklahoma
Attorney General, Oklahoma City, Oklahoma; Alan Wilson,
South Carolina Attorney General, Office of the South
Carolina Attorney General, Columbia, South Carolina;
Marty Jackley, South Dakota Attorney General, Office of the
South Dakota Attorney General, Pierre, South Dakota; Ken
Paxton, Texas Attorney General, Office of the Texas
Attorney General, Austin, Texas; Sean D. Reyes, Utah
Attorney General, Office of the Utah Attorney General, Salt
Lake City, Utah; Jason Miyares, Virginia Attorney General,
Office of the Virginia Attorney General, Richmond,
Virginia; Patrick Morrisey, West Virginia Attorney General,
Office of the West Virginia Attorney General, Charleston,
West Virginia; for Amici Curiae State(s) of Alabama,
Alaska, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas,
Louisiana, Mississippi, Missouri, Montana, Nebraska, North
Dakota, Ohio, Oklahoma, South Carolina, South Dakota,
Texas, Utah, Virginia, and West Virginia.

Leonard B. Garfinkel, General Counsel, California Department of Education, Sacramento, California, for Amicus Curiae California Department of Education.

Theresa C. Witherspoon and Laura P. Juran, California Teachers Association, Burlingame, California; Glenn Rothner, Rothner Segall & Greenstone, Pasadena, California; for Amici Curiae California Teachers Association, California Federation of Teachers, California Association of School Psychologists, California Association of School Counselors, California School Nurses Organization, and California Association of School Social Workers.

Ilya Shapiro, Manhattan Institute, New York, New York, for Amici Curiae Manhattan Institute and Dr. Leor Sapir.

John A. Eidsmoe, Talmadge Butts, and Roy S. Moore, Foundation for Moral Law, Gallant, Alabama, for Amicus Curiae Foundation for Moral Law.

Jennifer W. Kennedy, Law Office of Jennifer W. Kennedy, Sierra Madre, California, for Amicus Curiae Our Duty.

Dean McGee and Emily Rae, Liberty Justice Center, Chicago, Illinois; Luke N. Berg and Richard M. Esenberg, Wisconsin Institute for Law & Liberty, Milwaukee, Wisconsin; for Amici Curiae Liberty Justice Center, Wisconsin Institute for Law & Liberty, and Dr. Erica E. Anderson, PhD.

Katherine L. Anderson and David A. Cortman, Alliance Defending Freedom, Scottsdale, Arizona; John J. Bursch, Vincent M. Wagner, and Matthew C. Ray, Alliance Defending Freedom, Lansdowne, Virginia; for Amicus Curiae The Justice Foundation.

Amy Whelan and Shannon Minter, National Center for Lesbian Rights, San Francisco, California, for Amicus Curiae Professors of Psychology & Human Development.

Jean Strout and Kamala Buchanan-Williams, National Center for Youth Law, Oakland, California, for Amicus Curiae National Center for Youth Law.

Jennifer L. Chou and Elizabeth O. Gill, ACLU Foundation of Northern California, San Francisco, California; Amanda Goad, Ariana Rodriguez, and Christine Parker, ACLU Foundation of Southern California, Los Angeles, California; Harper Seldin, American Civil Liberties Union Foundation, New York, New York; for Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Northern California, and American Civil Liberties Union of Southern California.

Jeffrey M. Gutkin, Cooley LLP, San Francisco, California; Urvashi Malhotra, Cooley LLP, Palo Alto, California; Karen L. Loewy, Lambda Legal Defense and Education Fund, Inc., Washington, D.C.; Paul D. Castillo, Lambda Legal Defense and Education Fund, Inc., Dallas, Texas; for Amici Curiae Lambda Legal Defense and Education Fund, Inc., GLBTQ Legal Advocates & Defenders, The Trevor Project, Inc., Pflag, Inc., Equality California, Inc., Courage California, Rainbow Pride Youth Alliance, Sacramento LGBT Community Center, and Legal Services of Northern California.

REGINO V. STALEY                    9

# OPINION

CHRISTEN, Circuit Judge:

Aurora Regino's minor child is a student in the Chico Unified School District. Consistent with a District policy, the District began using the child's new preferred name and pronouns without informing Regino. Regino challenged the policy in district court, raising as-applied and facial claims and arguing that enforcement of the policy deprived her of substantive and procedural due process. The district court dismissed Regino's complaint. Because the district court applied erroneous legal standards to the substantive and procedural due process claims, we vacate and remand.

## I

### A

This appeal concerns the Chico Unified School District's Administrative Regulation #5145.3 (the "Policy"). The Policy was developed, adopted, and implemented by Superintendent Kelly Staley, or her predecessor, and it applies to all schools within the District.[1] The Policy

---

[1] These facts are derived from the allegations in Regino's complaint. With respect to the Policy, Staley asserts that the District based the Policy on a sample regulation circulated by the California School Boards Association in accordance with directives issued by the California Department of Education ("CDE"). According to Staley, the CDE issued its directives in the form of a list of "Frequently Asked Questions" and did so to provide guidance for complying with California Assembly Bill No. 1266 (2013), which, *inter alia*, prohibits California public schools from discriminating on the basis of gender, gender identity, and gender expression. Although the State of California and the CDE appeared as *amici curiae* in this appeal, they are not parties. Neither the precise

"prohibits acts of verbal, nonverbal, or physical aggression, intimidation, or hostility that are based on sex, gender identity, or gender expression, or that have the purpose or effect of producing a negative impact on the student's academic performance or of creating an intimidating, hostile, or offensive educational environment, regardless of whether the acts are sexual in nature." Prohibited conduct includes "[r]efusing to address a student by a name and the pronouns consistent with the student's gender identity," and "[r]evealing a student's transgender status to individuals who do not have a legitimate need for the information, without the student's consent."

The Policy requires that the District "address each situation" concerning transgender or gender-nonconforming students "on a case-by-case basis, in accordance with [certain] guidelines." Three such guidelines are relevant to this appeal. First, a "Compliance Officer shall accept the student's assertion of his/her gender identity and begin to treat the student consistent with that gender identity."[2] Second, "[i]f a student so chooses, district personnel shall be required to address the student by a name and the pronoun(s) consistent with the student's gender identity, without the necessity of a court order or a change to the student's official district record."[3] Third, "the district shall only disclose" a

---

origin of the Policy, nor its relationship to any state-level legislation or regulation, is at issue in this appeal.

[2] A Compliance Officer need not accept a student's assertion of his or her gender identity if "district personnel present a credible and supportable basis for believing that the student's assertion is for an improper purpose."

[3] The Policy states that "inadvertent slips or honest mistakes . . . will, in general, not constitute a violation of this administrative regulation."

student's transgender or gender-nonconforming status to others "with the student's prior written consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being."

## B

Regino is the single mother of two minor daughters, A.S. and C.S., both of whom attend schools in the District. During the 2021-22 school year, A.S. attended fifth grade at Sierra View Elementary School. In the fall of 2021, when A.S. was eleven years old, A.S. began to feel depressed and anxious. She had experienced significant changes in her home life during the preceding months, such as the death of her grandfather and Regino's completion of treatment for breast cancer.

Throughout the 2021-22 school year, a school counselor at Sierra View visited A.S.'s class on a regular basis to remind students about the services provided by the counselor's office. During these visits, the counselor addressed issues of gender identity and sexuality. In December 2021, A.S. began to feel like she might be a boy. Around that time, A.S. met with the counselor to discuss her anxiety and depression, but did not discuss her feelings about her gender identity.

In early 2022, A.S. visited the counselor and told her that she "felt like a boy." The counselor asked A.S. whether she would like to go by a different name, and whether she would prefer to be addressed with male pronouns. A.S. responded that she would prefer male pronouns and to be addressed as "J.S." The counselor asked A.S. if she would like her mother to be notified. A.S. responded that she did not want her mother to know because she feared Regino would be mad at

her.  At the end of the visit, the counselor walked A.S. to her classroom and informed the teacher that A.S. was now going by "J.S." and male pronouns.  The teacher began referring to A.S. in this manner.  The counselor also arranged for other school personnel to refer to A.S. as "J.S." and with male pronouns.

In the spring of 2022, the counselor and A.S. met on two other occasions.  During these meetings, the counselor provided A.S. with information about a local community group that advocated for LGBTQ+ causes and also discussed "top surgery" and "breast binding."  During one of the meetings, A.S. told the counselor she wanted to tell her mother about her new gender identity.  The counselor encouraged A.S. to speak with other family members first before telling her mother.  In April 2022, A.S. told her grandmother about her gender identity, and A.S.'s grandmother promptly told Regino.

Regino was surprised to learn of A.S.'s new gender identity and to hear that District personnel had been referring to A.S. as J.S., and with male pronouns, without informing Regino.  Regino let A.S. know that she supported her and would assist in her transition, if that was what A.S. wanted.  Regino arranged for A.S. to begin counseling sessions to discuss her depression and anxiety.

In April 2022, Regino contacted the school to report that the counselor and other personnel had not told her that they had begun to refer to A.S. by a different name and with male pronouns.  Regino alleges that if she had been "involved in the process, she would not have allowed Sierra View to socially transition her daughter without first seeking guidance from a mental health professional."  Regino raised her concerns with the District, and after several discussions

and meetings with various District employees, Regino met with Staley in October 2022.  During that meeting, Regino sought assurances that what happened with A.S. would not happen again with A.S. or with Regino's younger daughter, C.S.  At that time, Regino learned about the Policy.

Meanwhile, over the spring and summer of 2022, A.S.'s feelings about being a boy subsided.  As of the time the operative complaint was filed, A.S. identified as a girl and remained in counseling for depression and anxiety.  The complaint alleges that C.S. began exhibiting traits and behaviors that make her likely to seek to identify as a boy as she gets older.

## C

In January 2023, Regino filed a complaint in federal court against Staley, seeking a declaration invalidating the Policy as violative of Regino's constitutional rights and an injunction against enforcement of the Policy.[4]  She also filed a motion for a preliminary injunction, which the district court denied.

In March 2023, in response to a motion to dismiss, Regino filed a First Amended Complaint.  That complaint, which is the operative complaint, contains six claims raised pursuant to 42 U.S.C. § 1983: (1) a facial substantive due process challenge; (2) an as-applied substantive due process challenge; (3) a facial procedural due process challenge; (4) an as-applied procedural due process challenge; (5) a facial First Amendment familial association challenge; and

---

[4] Regino's original complaint named, in addition to Staley, individual members of the District's Board of Education.  The district court dismissed these defendants and Regino does not appeal that ruling.

(6) an as-applied First Amendment familial association challenge.

Regino alleges that the Policy amounts to a "[s]ecrecy [p]olicy," whereby school personnel "(1) socially transition any student who claims to have a transgender identity and asks to be socially transitioned in the school environment and (2) keep the social transitioning secret from the student's parents unless the student specifically authorizes parental notification." Regino asserts that social transitioning is "the active affirmation of a person's transgender identity." According to Regino, social transitioning in the school setting "primarily refers to calling the student by a new name associated with their transgender identity and referring to the student by pronouns associated with their transgender identity." This social transitioning, Regino alleges, is "a significant form of psychological treatment." Regino contends that enforcement of the Policy infringes her constitutional rights because it requires District personnel to socially transition her children without notice to her or her consent.

In April 2023, Staley again moved to dismiss. The district court granted the motion in full. The court reasoned that Regino had failed to allege the existence of a fundamental right that was clearly established in existing precedent and denied leave to amend on the ground that amendment would be futile. Regino timely appealed.

## II

We review de novo a district court's order granting a motion to dismiss. *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1203 (9th Cir. 2005).

## III

"To prevail under 42 U.S.C. § 1983, a plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Marsh v. County of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause "'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Here, Regino alleges that Staley deprived her of her rights to both substantive and procedural due process.

Regino raises facial and as-applied challenges premised on each of these rights. Generally, "a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). An as-applied challenge, on the other hand, "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted). We first address Regino's as-applied claims, and then turn to her facial claims.

### A

### 1

We begin with substantive due process.  Substantive due process protects individuals from state action that interferes with fundamental rights.  *See Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008).  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  *Reno v. Flores*, 507 U.S. 292, 302 (1993); *see also Fields*, 427 F.3d at 1208.[5]  On the other hand, "[l]aws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'"  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).

To assess whether there has been a violation of a fundamental right, we begin with "a 'careful description' of the asserted fundamental liberty interest."  *Glucksberg*, 521 U.S. at 721; *see also Stormans*, 794 F.3d at 1085-86.  With

---

[5] The Supreme Court has applied two different legal standards to substantive due process claims.  *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (per curiam); *see also Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part); *Matsuda v. City & County of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008).  One is the "fundamental rights" standard we apply here.  The other is the "shocks the conscience" standard, under which deliberate government action violates the Fourteenth Amendment if it is "arbitrary" and "unrestrained by the established principles of private right and distributive justice."  *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation omitted).  Because Regino asserts a violation of her substantive due process rights solely under a fundamental rights theory, we do not address the shocks-the-conscience standard and express no opinion on its applicability.

that careful description in mind, we must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Khachatryan v. Blinken*, 4 F.4th 841, 858 (9th Cir. 2021) (quoting *Glucksberg*, 521 U.S. at 720-21); *see also Stormans*, 794 F.3d at 1087.

Supreme Court precedent instructs us "to 'exercise the utmost care' before 'breaking new ground' in the area of unenumerated fundamental rights." *Khachatryan*, 4 F.4th at 856 (alteration accepted) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Such caution is warranted because the "guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (quoting *Collins*, 503 U.S. at 125); *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239-40 (2022) (noting that substantive due process has sometimes been "a treacherous field" that has "led the Court to usurp authority that the Constitution entrusts to the people's elected representatives" (citation omitted)). Thus, any new fundamental rights must typically "be defined in a most circumscribed manner, with central reference to specific historical practices." *Khachatryan*, 4 F.4th at 856 (quoting *Obergefell v. Hodges*, 576 U.S. 644, 671 (2015)).

**2**

In the district court, Regino argued that the District's Policy violated her fundamental rights. Regino did not precisely identify her asserted fundamental rights in her operative complaint, but she broadly asserted in briefing on the District's motion to dismiss that the Policy infringed:

(i) her right to make medical decisions for her children, (ii) her right to make important decisions in the lives of her children that go to the heart of parental decision-making, and (iii) her right to maintain familial integrity and association.[6]

Regino contends that these asserted rights are encapsulated within the deep-rooted "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion); *see also Meyer v. Nebraska*, 262 U.S. 390, 402 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925). But this broad parental right is not absolute; it must "bow to other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *parens patriae*." *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012); *see also Fields*, 427 F.3d at 1204. Because limitations on this general right circumscribe its scope and delineate its contours, "identifying a general parental right is far different than concluding that it has been infringed." *Hooks v. Clark Cnty. Sch. Dist.*, 228 F.3d 1036, 1042 (9th Cir. 2000).

Courts have recognized that parental rights are confined by the interests of the State. For instance, although the right

---

[6] Courts have not been "entirely clear regarding the source of the right" to familial association and have "variously relied on the Fourteenth, First, and Fourth Amendments." *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018). Here, Regino purports to raise familial association claims under the rubrics of both substantive due process and the First Amendment. However, the parties agree that in this particular scenario, Regino's familial association claims under the First Amendment are entirely subsumed within her familial association claims premised on substantive due process. Accordingly, we do not separately address her First Amendment claims.

of parents to make decisions concerning the care, custody, and control of their children encompasses the right of parents to make important medical decisions for their children, that right is not unlimited. *See Parham v. J.R.*, 442 U.S. 584, 603-04 (1979); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). States have required compulsory vaccination for children. *Prince*, 321 U.S. at 166. In some circumstances, states may also perform medical treatments, such as blood transfusions, over parents' objections and contrary to parents' expressed beliefs. *Jehovah's Witnesses v. King Cnty. Hosp. Unit No. 1 (Harborview)*, 278 F. Supp. 488, 504 (W.D. Wash. 1967) (three-judge panel), *aff'd*, 390 U.S. 598 (1968) (per curiam); *see also Pickup v. Brown*, 740 F.3d 1208, 1236 (9th Cir. 2014) (noting that parents cannot compel a state to accept their views "of what therapy is safe and effective for minors").

Here, the district court concluded that Regino failed to adequately allege the existence of a cognizable fundamental right, but failed to conduct the proper analysis. Understandably cautious about improperly expanding substantive due process rights, the court borrowed a standard from the qualified immunity context and reasoned that a fundamental right is not sufficiently cognizable unless the right has been "clearly established," such that existing precedent places it "beyond debate." *See David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). Because existing precedent did not expressly address Regino's articulation of her asserted fundamental rights, the district court held that the rights she asserted were not fundamental. This was error. We have never held that a plaintiff asserting a substantive due process claim must show that existing precedent clearly establishes the asserted

fundamental right, and we see no reason to import this standard now.

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). In the qualified immunity context, a right is considered clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This standard ensures that immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The qualified immunity framework does not govern the merits of substantive due process claims, where the critical inquiry is whether an asserted fundamental right is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Khachatryan*, 4 F.4th at 858 (quoting *Glucksberg*, 521 U.S. at 720-21). Indeed, a right need not have been expressly recognized as fundamental in caselaw for it to be deeply rooted in our history and tradition and implicit in the concept of ordered liberty. Although we must be "reluctant to expand the concept of substantive due process" and must "exercise the utmost care" before breaking new ground, the substantive due process framework does not require a right to have been clearly established by existing precedent. *Glucksberg*, 521 U.S. at 720.

The district court imposed the qualified immunity standard instead of applying the established test for determining whether an asserted right is fundamental. Because this placed an improper burden on Regino, this portion of the district court's order cannot stand.

**3**

Having concluded that the district court erred in its analysis, we must decide whether to undertake the proper analysis in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals."). Both parties urge us to reach the question whether Regino has adequately alleged the infringement of her fundamental rights, but because the parties have failed to consistently articulate the scope of their respective claims and defenses, remand is required.

Regino's characterization of her asserted fundamental rights has shifted over the course of this litigation. In her complaint, Regino loosely invoked general parental rights. In response to the District's motion to dismiss, she invoked three nebulous rights that had been mentioned in prior cases. On appeal, Regino's position continued to evolve. For instance, in her briefing to our court, Regino asserted a broad right to control—*i.e.*, including the right to grant or withhold consent—any "psychological treatment" the State provides her children, regardless of whether her child seeks that treatment. Regino also argued in her briefing that schools have an affirmative obligation to notify parents about their children's preferred gender identity. But at oral argument before our court, Regino narrowed these positions. She conceded that her parental rights do not encompass the right

to invade her child's relationship with a counselor or therapist, and that a teacher's knowledge of a child's transgender status does not trigger an affirmative obligation to notify the child's parents. Regino suggested at oral argument that her fundamental rights were implicated only by the District's creation of an environment in which a student's transgender identity is affirmed—*e.g.*, where a counselor informs other faculty members to address a student using a new name or pronouns.

These shifts in position are problematic because they undermine the critical requirement that we begin the substantive due process analysis with a "careful description" of the asserted fundamental right. *Glucksberg*, 521 U.S. at 721; *see also Collins*, 503 U.S. at 125.[7] To be sure, there is undoubtedly a "fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Troxel*, 530 U.S. at 66, but even Regino acknowledges that there are important limitations on that right, *see Fields*, 427 F.3d at 1204. With only a vague, protean conception of the right Regino is asserting, it is

---

[7] Regino argues that the "careful description" requirement applies only to determine the existence of a new fundamental right, and not to analyze whether an asserted right is encompassed within a fundamental right that has been previously recognized. The Supreme Court has not embraced this limitation, and has instead stated without qualification: "[W]e have required in substantive-due-process cases 'a careful description' of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 721; *see also id.* at 722 ("[W]e have a tradition of carefully formulating the interest at stake in substantive-due-process cases."); *Raich v. Gonzales*, 500 F.3d 850, 863-64 (9th Cir. 2007); *Stormans*, 794 F.3d at 1085-86. Regardless of whether a right has been previously recognized in judicial precedent, the critical question is whether the asserted right is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 720-21.

difficult to discern whether that right is properly recognized as "fundamental." Thus, on remand, it will be critical that Regino clearly and consistently articulate the right or rights she is actually asserting.

Like Regino, Staley has failed to consistently identify the District's justifications for its Policy. For example, Staley argued in her briefing on appeal that minor children have the same informational privacy interests in their gender identity as adults. At oral argument, counsel for Staley took the position that any student, regardless of age, could "trigger" the Policy, and that the terms of the Policy make no distinction between children who are six and those who are seventeen. But Staley retreated from this unqualified position at another point in the argument, and emphasized that the Policy subjects a minor child's decision about the disclosure of his or her private information to "an adult surrogate review" to determine whether disclosure is in the best interest of the child.

The district court had no opportunity to address the parties' revamped arguments. In this circumstance, "it is normally inappropriate for us to evaluate the argument in the first instance." *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014). Thus, given the meaningful changes in the parties' respective positions, we conclude that the best course is to vacate and remand. *Detrich v. Ryan*, 740 F.3d 1237, 1248-49 (9th Cir. 2013) (en banc) (noting that a "standard practice . . . is to remand to the district court for a decision in the first instance without requiring any special justification for so doing"), *overruled in part on other grounds by Shinn v. Ramirez*, 596 U.S. 366 (2022). This will permit the district court to conduct the proper analysis in the first instance. *See Shirk*, 773 F.3d at 1007 ("As a federal court of appeals, we must always be

mindful that 'we are a court of review, not first view.'" (quoting *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1043 n.4 (9th Cir. 2011))); *see also Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000) (noting reasons that "[o]ur judicial system generally assumes that consideration of an issue at both the trial court and appellate court level is more likely to yield the correct result").

**4**

**a**

On remand, the district court shall consider whether Regino has alleged the infringement of a fundamental right. To do so, it should follow the "established method" of substantive due process analysis. *Glucksberg*, 521 U.S. at 720.

This analysis begins by "carefully formulating" the asserted fundamental right. *Id.* at 722. This will require the court to examine Regino's articulation of the particular fundamental right she asserts. *See Collins*, 503 U.S. at 125 (noting that "[i]t is important . . . to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake"). In conducting its analysis, the court must eschew sweeping generalizations, and instead "adopt a narrow definition of the interest at stake." *Raich*, 500 F.3d at 863; *see also Khachatryan*, 4 F.4th at 857-58.

The Supreme Court has repeatedly rejected broad formulations of asserted fundamental rights, in favor of being "more precise." *Glucksberg*, 521 U.S. at 723. For example, rather than examining a generic "right to die," the Supreme Court identified the "constitutionally protected right to refuse lifesaving hydration and nutrition." *Cruzan*

*ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 277-79 (1990). Similarly, in *Flores*, the Supreme Court rejected the plaintiffs' characterization of the right to "freedom from physical restraint" as too generalized, and instead addressed "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." 507 U.S. at 302; *see also Raich*, 500 F.3d at 864 (accepting the plaintiff's "careful statement" of the right to "mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life" only after specifically including "the use of marijuana" as central to the proposed right (alteration in original)).

To formulate the asserted fundamental right on remand, the district court must consult "both the scope of the challenged regulation and the nature of [Regino's] allegations." *Stormans*, 794 F.3d at 1085. This will require reconciling discrepancies between the parties' assertions in their pleadings, in their briefing, and in the positions they advanced at argument. For example, it will be important for Regino to clarify whether she asserts a right to decide whether the District may engage in what she deems social transitioning, or whether she asserts only a right to notification if such social transitioning occurs. The court should also clarify what information Regino argues District personnel are required to disclose, and what Regino asserts as the triggering event for any purported obligation of the District to affirmatively provide parental notification.

Pursuant to *Stormans*, *id.*, the district court must also closely examine the details of the challenged Policy,

including, for example, the circumstances under which it allows or requires the District to inform a parent of a student's transgender or gender-nonconforming status. At oral argument, counsel disagreed about whether the Policy necessarily requires consideration of factors such as the student's age. Staley insisted that although the Policy does not require that District personnel make a "best interests" determination, any evaluation would undoubtedly consider factors such as the student's age and stated reasons for preferring non-disclosure to determine what is in the student's best interest. Regino countered that the Policy requires the District to presumptively assent to a student's desire to withhold information unless there are compelling reasons to do otherwise that relate to the student's "physical or mental well-being." In Regino's view, the Policy is not neutral; it favors non-disclosure. We leave it to the district court to carefully parse the Policy's terms on remand.

## b

After formulating the asserted fundamental right, the district court must consider whether the asserted right itself, or one in which it is encompassed, is "objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed." *Id.* at 1087 (quoting *Glucksberg*, 521 U.S. at 720-21); *see also Fields*, 427 F.3d at 1204. Thus far, both parties have advanced unqualified positions that are unsupported by precedent: Regino has suggested that parental rights are nearly unlimited, and the District has insisted that a child's right to make decisions is nearly unrestricted. Neither is the case. On remand, the district court will be able to conduct a nuanced assessment of existing precedent concerning fundamental rights for parents. *See Glucksberg*, 521 U.S. at

721 (noting that "[o]ur Nation's history, legal traditions, and practices . . . provide the crucial 'guideposts for responsible decisionmaking'" (quoting *Collins*, 503 U.S. at 125)). Here, we briefly identify some of the important decisional guideposts for the district court's inquiry.

The Supreme Court has long recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. Courts often refer to this right as the "*Meyer-Pierce* right because it finds its origin in two Supreme Court cases": *Meyer* and *Pierce*. *Fields*, 427 F.3d at 1204; *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1229 & n.14 (9th Cir. 2020). *Meyer* and *Pierce* both involved parents that sought to send their children to private school in violation of state law. In *Meyer*, the Supreme Court recognized the right of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer*, 262 U.S. at 399-401. In *Pierce*, the Court acknowledged that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." *Pierce*, 268 U.S. at 534-35. The Supreme Court has since reaffirmed parents' fundamental right to make decisions concerning the care, custody, and control of their children in the context of cases involving, for example, custody termination, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972), a child's voluntary commitment, *Parham*, 442 U.S. at 602, and compulsory secondary education, *Wisconsin v. Yoder*, 406 U.S. 205, 213-14 (1972). *See also Troxel*, 530 U.S. at 66 (collecting cases).

But the right to "make decisions concerning the care, custody, and control" of children, *Troxel*, 530 U.S. at 66, "is not without limitations." *Fields*, 427 F.3d at 1204; *see also Lehr v. Robertson*, 463 U.S. 248, 256 (1983) (noting that

parental rights "are sufficiently vital to merit constitutional protection in appropriate cases"). The right does not reside exclusively with parents and is subject to regulation by the State "in the public interest." *Fields*, 427 F.3d at 1204 (alterations accepted) (quoting *Prince*, 321 U.S. at 166); *see also Hooks*, 228 F.3d at 1042. Several well-established limitations may bear on Regino's claims.

As already noted, the right of parents to make important medical decisions for their children is not unbounded. *See Parham*, 442 U.S. at 603-04. States may, under some circumstances, compel vaccination or medical treatments, even over parents' objections. *Prince*, 321 U.S. at 166-167; *Jehovah's Witnesses*, 278 F. Supp. at 504. Similarly, in the education context, *Meyer* and *Pierce* have been cabined. The Supreme Court has "stressed the 'limited scope of *Pierce*,' . . . which simply 'affirmed the right of private schools to exist and to operate.'" *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (citation omitted). As a general matter, "parents have the right to choose the educational forum, but not what takes place inside the school." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1020 (9th Cir. 2020). Parents "lack a constitutional right to direct the curriculum that is taught to their children," and "also lack constitutionally protected rights to direct school administration more generally." *Parents for Privacy*, 949 F.3d at 1231; *see also Fields*, 427 F.3d at 1205 (collecting cases).

These precedents and others will guide the district court's analysis on remand.

**B**

We next address Regino's as-applied procedural due process claim.  Because we conclude that the district court erred in its analysis, we vacate and remand.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972 (9th Cir. 2015) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).  Thus, to state a claim, Regino must first allege that she "has been deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs.*, 526 U.S. at 59 (quoting U.S. Const. amend. XIV).  If she adequately alleges such a deprivation, we must ask "whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Am. Civ. Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

The district court concluded that Regino's procedural due process claim failed because she did not "allege sufficient facts to establish that her fundamental parental rights extend to the circumstances of the instant case."  In the district court's view, Regino's failure to adequately allege a fundamental right in support of her substantive due process claims necessarily foreclosed her procedural due process claims.  This was error because the "procedural component of the Due Process Clause protects more than just fundamental rights."  *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995); *see also Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006) (noting that "[p]rocedural due process is not limited to interests which are 'fundamental'" and, unlike substantive due process, does not raise "concerns

of unbounded discretion and judicial supremacy"). Rather, procedural due process "protects all liberty interests that are derived from state law or from the Due Process Clause itself." *Mullins*, 57 F.3d at 795. Accordingly, Regino need not have identified a fundamental right to establish a violation of her procedural due process rights.

We vacate and remand for the district court to conduct a procedural due process analysis in the first instance. *See Shirk*, 773 F.3d at 1007. On remand, the district court shall consider whether Regino adequately alleged the deprivation of a liberty interest, regardless of whether that interest is deemed fundamental.

## C

Regino also raises facial claims, and the foregoing analysis applies to those claims as well.

Generally, "a plaintiff cannot succeed on a facial challenge unless he 'establishes that no set of circumstances exists under which the law would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (alterations accepted) (citations omitted).[8] Whether a challenge is

---

[8] In the First Amendment context, a less demanding standard applies. *See Moody*, 603 U.S. at 723. There, a "restriction on speech is facially overbroad if . . . 'a substantial number of its applications are unconstitutional, judged in relation to the provision's plainly legitimate sweep.'" *Hernandez v. City of Phoenix*, 43 F.4th 966, 980 (9th Cir. 2022) (alterations accepted) (citation omitted). This standard "provides breathing room for free expression," as "[o]verbroad laws 'may deter or chill constitutionally protected speech.'" *United States v. Hansen*, 599 U.S. 762, 769-70 (2023) (quotation marks and citation omitted). Although Regino nominally raises a First Amendment claim, she concedes that it is coextensive with her substantive due process claim,

"facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy.'" *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (citation omitted). Regardless of the type of challenge, however, the underlying constitutional standard remains the same. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010).

Here, the district court concluded that Regino's as-applied and facial claims failed for the same reasons and expressly noted that the underlying constitutional standard did not differ. The court did not address the distinction between facial and as-applied challenges. Because we conclude that the district court erred in its analysis of Regino's as-applied claims, its analysis of Regino's facial claims was flawed. We therefore vacate the district court's dismissal and remand.

## IV

We vacate the district court's judgment and remand for further proceedings consistent with this opinion.[9]

---

and does not argue that the more relaxed First Amendment standard for facial challenges applies here.

[9] Regino requests (Dkt. 8) that we take judicial notice of court filings, government records, and a journal article. Because this motion is unopposed and the materials are judicially noticeable, this motion is **GRANTED**. *See* Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012). Regino also requests (Dkt. 97) that we take judicial notice of a report about gender identity services from the United Kingdom's National Health Service. Staley opposes this request. Because the statements made in the report are disputed, this motion is **DENIED**. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90

**VACATED AND REMANDED.**[10]

---

(9th Cir. 2001). *Amicus Curiae* Our Duty's motion for leave to file a supplemental letter brief (Dkt. 112) is **GRANTED.**

[10] The parties shall bear their costs of appeal.

# EXHIBIT B

HARMEET K. DHILLON (SBN 207873)
MICHAEL A. COLUMBO (SBN 271283)
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Email: Harmeet@DhillonLaw.com
        MColumbo@DhillonLaw.com

JOSHUA W. DIXON (Admitted Pro Hac Vice)
ERIC A. SELL (Admitted Pro Hac Vice)
**CENTER FOR AMERICAN LIBERTY**
1311 South Main Street, Suite 302
Mount Airy, MD 21771
Telephone: (703) 687-6200
Email: JDixon@LibertyCenter.org
        ESell@LibertyCenter.org

*Attorneys for Plaintiff*
AURORA REGINO

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA REGINO,<br><br>    Plaintiff,<br><br>vs.<br><br>**SUPERINTENDENT KELLY STALEY, in her official capacity; CAITLIN DALBY, in her official capacity; REBECCA KONKIN, in her official capacity; TOM LANDO, in his official capacity; EILEEN ROBINSON, in her official capacity; and MATT TENNIS, in his official capacity,**<br><br>    **Defendants.** | **Case No.: 2:23-cv-00032-JAM-DMC**<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing Date: June 27, 2023<br>Time: 1:30 p.m.<br>Ctrm: 6<br>Judge: Hon. John A. Mendez<br><br>Complaint Filed: January 6, 2023<br>Trial Date: Not Yet Set |

---

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss                    Case No.: 2:23-cv-00032-JAM-DMC

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND...................................................................................................1

I. BACKGROUND ON SOCIAL TRANSITIONING ......................................................1

II. THE PARENTAL SECRECY POLICY ......................................................................1

ARGUMENT .....................................................................................................................2

I. THE POLICY VIOLATES MS. REGINO'S SUBSTANTIVE RIGHTS.................3

   A.  The Policy Violates Ms. Regino's Due Process and First Amendment Rights..................3

   B.  The District's Counterarguments are not Persuasive ..........................................6

   C.  Strict Scrutiny Applies.......................................................................8

   D.  The Policy Does Not Satisfy Strict Scrutiny ..................................................10

     1.  Student privacy from their parents is not a compelling governmental interest. .............10

     2.  The prevention of child abuse is speculative and irrationally overbroad. .....................12

   E.  The Policy Does Not Satisfy any Legal Standard ............................................13

II. THE POLICY VIOLATES MS. REGINO'S PROCEDURAL RIGHTS ...............13

   A.  The Policy Infringes Ms. Regino's Protected Liberty Interests .........................13

   B.  The Policy Creates a Procedurally Deficient Adjudicatory Process ......................14

III. THE POLICY IS FACIALLY INVALID...................................................................15

   A.  The Policy is Facially Invalid under *Salerno* ................................................15

   B.  The Policy is Unconstitutionally Overbroad ..................................................15

CONCLUSION ..................................................................................................................15

1

### <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Alfonso v. Fernandez,*
    606 N.Y.S.2d 259 (Ct. App. 1993) ..............................................................7

4

*Ams. for Prosp. Found. v. Bonta,*
    141 S. Ct. 2373 (2021)...................................................................15, 16

5

*Arnold v. Bd. of Educ. of Escambia Cnty.,*
    880 F.2d 305 (11th Cir. 1989) .................................................................6, 9

6

7

*B.P.J. v. West Virginia State Bd. of Educ.,*
    No. 2:21-CV-00316, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023)............................5

8

*Bd. of Dir. v. Rotary Club,*
    481 U.S. 537 (1987)........................................................................5

9

10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).........................................................................2

11

*Bellotti v. Baird,*
    443 U.S. 622 (1979).....................................................................10, 11

12

13

*Bi-Metallic Inv. Co. v. State Bd. Of Equalization,*
    239 U.S. 441 (1915)......................................................................14

14

*Bohn v. Dakota Cnty.,*
    772 F.2d 1433 (8th Cir. 1985) ...............................................................6

15

16

*Branca v. Nordstrom,*
    No.: 14cv2062-MMA (JMA), 2015 WL 10436858 (C.D. Cal. Oct. 9, 2015)......................2

17

*Brittain v. Hansen,*
    451 F.3d 982 (9th Cir. 2006) ................................................................9

18

19

*Bustamante v. Mukasey,*
    531 F.3d 1059 (9th Cir. 2008) ..............................................................14

20

*C.N. v. Ridgewood Bd. of Educ.,*
    430 F.3d 159 (3d Cir. 2005)..................................................................4

21

22

*C.N. v. Wolf,*
    410 F. Supp. 2d 894 (C.D. Cal. 2005) .......................................................12

23

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985).......................................................................14

24

25

*Cnty. of Sacramento v. Lewis,*
    523 U.S. 833 (1998)........................................................................9

26

*Corso v. Fischer,*
    983 F.Supp.2d 320 (S.D.N.Y. 2013)........................................................15

27

28

ii

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2228 (2022) ............................................................................10

*Doe v. Dickenson*,
   615 F. Supp. 2d 1002 (D. Ariz. 2009) ......................................................6

*Doe v. Heck*,
   327 F.3d 492 (7th Cir. 2003) ...............................................................9, 13

*Doe v. Irwin*,
   615 F.2d 1162 (6th Cir. 1980) ..............................................................7, 11

*Doe v. Manchester Sch. Dist.*,
   No. 216-2022-CV-00117 (N.H. Sup. Ct. Sept. 5, 2022) ........................12

*Duronslet v. Cnty. of Los Angeles*,
   266 F. Supp. 3d 1213(C.D. Cal. 2017) ..................................................8, 9

*E.E.O.C. v. Pan Am. World Airways, Inc.*,
   897 F.2d 1499 (9th Cir. 1990) ................................................................14

*Edmo v. Corizon, Inc.*,
   935 F.3d 757 (9th Cir. 2019) ...................................................................4

*Ferrari v. Nat. Partners, Inc.*,
   No. 15-CV-04787-LHK, 2016 WL 4440242 (N.D. Cal. Aug. 23, 2016)............2

*Fields v. Palmdale Sch. Dist. (PSD)*,
   447 F.3d 1187 (9th Cir. 2006) ...............................................................3, 8

*Fields v. Palmdale Sch. Dist.*,
   427 F.3d 1197 (9th Cir. 2005) ............................................................3, 4, 7

*Franz v. United States*,
   707 F.2d at 582 (D.C. Cir. 1983) .............................................................9

*Gantt v. City of Los Angeles*,
   717 F.3d 702 (9th Cir. 2013) .................................................................13

*Gruenke v. Seip*,
   225 F.3d 290 (3d Cir. 2000).................................................................6, 8

*H. L. v. Matheson*,
   450 U.S. 398 (1981)..............................................................................11

*Hawkins v. Freeman*,
   195 F.3d 732 (4th Cir. 1999) .................................................................10

*Hodgson v. Minnesota*,
   497 U.S. 417 (1990)............................................................................4, 6

*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
   344 F.3d 959 (9th Cir. 2003) .................................................................14

*IDK, Inc. v. Cnty. of Clark*,
   836 F.2d 1185 (9th Cir. 1988) .................................................................8

iii

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.,*
   No. 8:20-3552-PWG, 2022 WL 3544256 (D. Md. Aug. 18, 2022)...........................................12

*Jones v. Johnson,*
   781 F.2d 769 (9th Cir. 1986) .................................................................................................2

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.,*
   927 F.3d 396 (6th Cir. 2019) .................................................................................................9

*Keates v. Koile,*
   883 F.3d 1228 (9th Cir. 2018) ...............................................................................................8

*Kelson v. City of Springfield,*
   767 F.2d 651 (9th Cir. 1985) .................................................................................................5

*Kerry v. Din,*
   576 U.S. 86 (2015) ...............................................................................................................14

*LA All. for Hum. Rts. v. City of Los Angeles,*
   No. LACV2002291DOCKESX, 2021 WL 4713179 (C.D. Cal. Apr. 26, 2021)....................9

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) .............................................................................................2, 5

*Logan v. Zimmerman Brush Co.,*
   455 U.S. 422 (1982) .............................................................................................................14

*Lopez-Valenzuela v. Arpaio,*
   770 F.3d 772 (9th Cir. 2014) ...............................................................................................15

*Mann v. Cnty. of San Diego,*
   907 F.3d 1154 (9th Cir. 2018) ...............................................................................................4

*McCabe v. Sharrett,*
   12 F.3d 1558 (11th Cir. 1994) ...............................................................................................9

*McKinney v. Pate,*
   20 F.3d 1550 (11th Cir. 1994) .............................................................................................10

*Meyer v. Nebraska,*
   262 U.S. 390 (1923).................................................................................................................5

*Monroe v. Meeks,*
   584 F. Supp. 3d 643 (S.D. Ill. 2022).......................................................................................4

*Moore v. City of E. Cleveland, Ohio,*
   431 U.S. 494 (1977)............................................................................................................5, 9

*Mullins v. State of Or.,*
   57 F.3d 789 (9th Cir. 1995) .................................................................................................14

*Nelson v. NASA,*
   568 F.3d 1028 (9th Cir. 2009) .............................................................................................10

*Nguon v. Wolf,*
   517 F. Supp. 2d 1177 (C.D. Cal. 2007) ...............................................................................12

iv

*Nunez by Nunez v. City of San Diego,*
   114 F.3d 935 (9th Cir. 1997) .......................................................3, 5, 9, 11

*Obergefell v. Hodges,*
   576 U.S. 644 (2015) ...............................................................................3

*Ovando v. City of Los Angeles,*
   92 F. Supp. 2d 1011 (C.D. Cal. 2000) ...................................................6

*Parents for Priv. v. Barr,*
   949 F.3d 1210 (9th Cir. 2020) ...............................................................8

*Parham v. J.R.,*
   442 U.S. 584 (1979).......................................................................3, 7, 13

*Patel v. Searles,*
   305 F.3d 130 (2d Cir. 2002).....................................................................6

*Peralta v. Dillard,*
   744 F.3d 1076 (9th Cir. 2014) ...............................................................2

*Pierce v. Soc'y of Sisters,*
   268 U.S. 510 (1925).................................................................................5

*Pinson v. Hadaway,*
   No. 18-CV-3420-NEB-KMM, 2020 WL 6121357 (D. Minn. July 13, 2020)...........................4

*Porter v. Allbaugh,*
   No. 18-CV-0472-JED-FHM, 2019 WL 2167415 (N.D. Okla. May 17, 2019) ........................4

*Prince v. Massachusetts,*
   321 U.S. 158 (1944).................................................................................5

*Ricard v. USD 475 Geary Cnty., KS, Sch. Bd.,*
   No. 522CV04015HLTGEB, 2022 WL 1471372 (D. Kan. May 9, 2022)...........................5, 13

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984).................................................................................9

*Bd. of Dir. v. Rotary Club,*
   481 U.S. at 545 .......................................................................................8

*Shaw v. Hunt,*
   517 U.S. 899 (1996).................................................................................12

*Stanley v. Illinois,*
   405 U.S. 645 (1972).....................................................................9, 13, 14, 15

*Sterling v. Borough of Minersville,*
   232 F.3d 190 (3d Cir. 2000)....................................................................10

*Texaco, Inc. v. Short,*
   454 U.S. 516 (1982).................................................................................14

*Thomas v. Evansville-Vanderburgh Sch. Corp.,*
   258 F. Appx. 50 (7th Cir. 2007)........................................................7, 11

v

*Troxel v. Granville*,
    530 U.S. 57 (2000) ...............................................................................3, 5, 9, 13

*United States v. Salerno*,
    481 U.S. 739 (1987) ...........................................................................................14

*United States v. Wolf Child*,
    699 F.3d 1082 (9th Cir. 2012) ..............................................................................9

*Wallis v. Spencer*,
    202 F.3d 1126 (9th Cir. 2000) .....................................................................3, 7, 13

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ...................................................................................3, 9, 10

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020) .........................................................................4


**Other Authorities**

Blackstone, Commentaries on the Laws of England ...................................................10

Kent, Commentaries on American Law ......................................................................10

vi

1   The Court should deny Defendant's Motion to Dismiss for the reasons set forth below.

2   **FACTUAL BACKGROUND**

3   **I.   BACKGROUND ON SOCIAL TRANSITIONING**

4   "Social transitioning" is the active affirmation of a person's transgender identity. (First

5   Am. Compl. ("FAC") ¶ 2.) In the school setting, it primarily refers to calling transgender-

6   identifying students by a new name and pronouns associated with their transgender identity. (*Id.*)

7   Social transitioning is a significant form of psychological treatment. (*Id.* ¶¶ 2, 5, 43, 50.)

8   Its purpose is to alleviate the psychological distress that can sometimes accompany having a

9   transgender identity. (*Id.* ¶ 5.) It also has serious consequences. In children, it dramatically

10   increases the chances that their transgender identity will persist. (*Id.* ¶¶ 33–34, 43.) In addition,

11   most children who are socially transitioned go on to receive future additional "affirmative" care

12   in the form of puberty blockers and cross-sex hormones. (*Id.* ¶ 44.) The risks of this care are

13   serious, and include bone weakness, sterility, and increased suicide risk. (*Id.*)

14   Socially transitioning every transgender-identifying child who asks for it is a "one-size-

15   fits-all" approach that fails to account for each child's unique situation. (*Id.* ¶ 41–42.) In addition,

16   for some children, education about gender roles—not social transition—is appropriate. (*Id.* ¶ 42.)

17   Parental involvement is necessary for the assessment, diagnosis, and treatment—including

18   social transitioning—of transgender-identifying children. (*Id.* ¶ 46–47.) Without it, children who

19   may need professional help are unable to obtain it. (*Id.*) In addition, the child will inhabit different

20   gender identities at home and school, a psychologically unhealthy situation that drives a wedge

21   between parent and child. (*Id.* ¶ 48, 50.) And because children are incapable of making sound

22   judgments regarding their own care, their parents must be involved. (*Id.* ¶ 49.)

23   **II.   THE PARENTAL SECRECY POLICY**

24   Defendant (the "District") applies Admin. Reg. #5145.3 (the "Parental Secrecy Policy" or

25   "Policy") at its twenty-three schools.  (FAC ¶ 18 and Ex. F.) Under the Policy, if a student asks to

26   go by a new name and pronouns, everyone at school—administrators, teachers, and students—is

27   required to refer to the student that way. (FAC Ex. F at 5.) In other words, the Policy mandates

28   that the student be socially transitioned. Unless the student says otherwise, the Policy requires

1

everyone at school to conceal this fact from the student's parents, except when disclosure is either required by law or "necessary," in the District's judgment, for the student's well-being. (*Id.* at 5–6.) Violations of the Policy are punishable by "appropriate disciplinary action." (*Id.* at 3.)

During the 2021–22 school year, A.S. was in the fifth grade at a school in the District. (FAC ¶¶ 55–63.) In early 2022, A.S. told a school counselor that she "felt like a boy." (*Id.* ¶¶ 64–71.) Pursuant to the Policy, the counselor asked A.S. whether she would like to go by a boy's name and pronouns. (*Id.*) A.S. said that she would. (*Id.*) The counselor asked A.S. if she wanted her mother to know. (*Id.*) A.S. said she did not. (*Id.*) The counselor and / or A.S.'s teacher arranged for other school personnel to begin referring to her by her boy's name and male pronouns. (*Id.*)

In April of 2022, Ms. Regino learned that the District had socially transitioned A.S. (*Id.* ¶ 72.) Ms. Regino is a fit parent, and she was supportive of her daughter. (*Id.* ¶ 73.) Had Ms. Regino been consulted, however, she would not have allowed the District to socially transition A.S. without first seeking professional guidance. (*Id.* ¶ 75.)

Ms. Regino now seeks prospective relief against continued application of the Policy.

## <u>ARGUMENT</u>

To survive a Rule 12(b)(6) motion, a complaint must plead only a "plausible" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "draw all reasonable inferences" in the plaintiff's favor and "presume [her] factual allegations [are true]." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This requirement applies to allegations of a "scientific" nature. *Ferrari v. Nat. Partners, Inc.*, No. 15-CV-04787-LHK, 2016 WL 4440242, at *5 (N.D. Cal. Aug. 23, 2016). *See also Jones v. Johnson*, 781 F.2d 769, 772 n.1 (9th Cir. 1986) (allegations regarding medical causation), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Branca v. Nordstrom*, No.: 14cv2062-MMA (JMA), 2015 WL 10436858, at *7 (C.D. Cal. Oct. 9, 2015) (allegations regarding consumer survey data).

The Court may not consider facts "extrinsic" to the complaint or take "judicial notice of disputed . . . fact[s]." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Thus, the Court must disregard the District's citation to the Declaration of Jack Turban and the WPATH Guidelines. (Mot. at 9 n.1.) *See also* Pl.'s Opp'n to Def.'s Request for Judicial Notice.

---

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

## I.   THE POLICY VIOLATES MS. REGINO'S SUBSTANTIVE RIGHTS

### A.  The Policy Violates Ms. Regino's Due Process and First Amendment Rights

Parents have a fundamental due process right to the "care, custody, and control" of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.). This right rests on the presumptions that (1) "parents possess what a child lacks in maturity, experience, and capacity for judgment" and (2) the "natural bonds of affection lead parents to act in the best interests of their children." *Parham v. J.R.*, 442 U.S. 584, 602 (1979).

Because the Supreme Court has long held that parents have this right, Ms. Regino is not required to demonstrate, by a "careful description," that it exists under our history and traditions. *Cf. Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Rather, the question is whether Ms. Regino's claims fall within the scope of this right. *Troxel*, 530 U.S. at 65–66 (plurality op.) (evaluating whether statute violated right to child visitation without considering whether such right was "careful[ly] descri[bed]" under our history and traditions); *id.* at 77–78 (same) (Souter, J., concurring); *id.* at 80 (same) (Thomas, J., concurring); *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1203–04 (9th Cir. 2005) ("*Fields I*") (same with respect to right to control information given to children), *opinion amended on denial of reh'g sub nom. Fields v. Palmdale Sch. Dist. (PSD)*, 447 F.3d 1187 (9th Cir. 2006) ("*Fields II*"); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 952 (9th Cir. 1997) (same with respect to right to allow children to go outside at night); *see also Obergefell v. Hodges*, 576 U.S. 644, 671 (2015) (noting that question was not whether the Court should create a "new . . . right to same-sex marriage" but whether the right to same-sex marriage falls within "the right to marry in its comprehensive sense") (cleaned up).

In any event, based on a careful description of the right involved, under our history and traditions, Ms. Regino plausibly alleges that the Policy violates her parental rights in three ways:

***First,*** the Policy violates Ms. Regino's right to make "medical decisions for [her] children." *Wallis v. Spencer*, 202 F.3d 1126, 1141–42 (9th Cir. 2000) (citing *Parham*, 442 U.S. at 602). Social transitioning is a significant form of psychological treatment. (FAC ¶¶ 2, 5.) By authorizing the District to socially transition her children without her consent, the Policy usurps her right to control her children's "care." *Troxel*, 530 U.S. at 65 (plurality op.).

3

The District does not dispute Ms. Regino's allegation that social transitioning constitutes "treatment," nor could it at this stage in the proceedings. Moreover, the Ninth Circuit and other courts have concluded that social transitioning constitutes "treatment." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019); *Monroe v. Meeks*, 584 F. Supp. 3d 643, 678 (S.D. Ill. 2022); *Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *1 (D. Minn. July 13, 2020); *Porter v. Allbaugh*, No. 18-CV-0472-JED-FHM, 2019 WL 2167415, at *2 (N.D. Okla. May 17, 2019). This conclusion is buttressed by the purpose of social transitioning—to alleviate psychological distress (FAC ¶ 5)—and its grave consequences, especially in children. It substantially reduces the number of children who desist. (*Id.* ¶ 43.) *See also Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 48 (D.D.C. 2020) (noting that "childhood social transitions [are] important predictors of persistence") (cleaned up). And children who are socially transitioned are highly likely to receive future "affirmative" care, which has serious side-effects. (FAC ¶ 44.)

It does not matter that Ms. Regino's children may want the District to socially transition them. As minors, Ms. Regino's children are unable to provide informed consent to psychological treatment. (FAC ¶ 5, 49, 101.) Accordingly, the District may not socially transition them without her consent. *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) (noting that "children [are unable] to provide informed permission for medical procedures").[1]

***Second,*** the Policy violates Ms. Regino's right to make "important . . . decisions," *Fields I*, 427 F.3d at 1208, in the lives of her children that go to the "heart of parental decision-making," *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005). Indeed, the default common-law rule was that parents generally have the "right . . . to speak and act on their [children's] behalf." *Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990) (Kennedy, J., concurring in part). Thus, the state

---

[1] Even if the Court considered the WPATH Guidelines, they establish that social transitioning: (1) constitutes psychological treatment (WPATH Guidelines at S39, S46, S60, S77–78); (2) requires parental involvement (*id.* at S44, S49, S58, S61–62, S77–78); and (3) is not appropriate for every transgender-identifying child who asks for it, (*id.* at S45, S50–51, S61, S58, S73, S76, S78).

4

may not, for example, unduly interfere with parents' decisions regarding child visitation, *Troxel*, 530 U.S. 57, whether to send their children to private school, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925), the subjects they can teach their children, *Meyer v. Nebraska*, 262 U.S. 390 (1923), and whether their children can go out in public at night, *Nunez*, 114 F.3d at 952.

The decision whether to socially transition a child falls squarely within this precedent. *Ricard v. USD 475 Geary Cnty., KS Sch. Bd.*, No. 522CV04015HLTGEB, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022) (holding parents must "have a say in what [their] minor child[ren are] called" by their school). Social transitioning is a life-altering decision that impacts the very "core" of the child's identity. *B.P.J. v. West Virginia State Bd. of Educ.*, No. 2:21-CV-00316, 2023 WL 111875, at *7 (S.D. W. Va. Jan. 5, 2023) (cleaned up). And as discussed, it substantially reduces the odds of desistence, is likely to lead to a life of medicalization, and—when done by schools behind parents' backs—results in the child suffering alone and without parental guidance. (FAC ¶¶ 43–44, 47–50.) *See also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) (noting that the "nurture of the child reside[s] first in the parents"). In short, the Policy impermissibly treats students as if they were "mere creatures of the state." *Pierce,* 268 U.S. at 535.

**Third,** the Policy infringes on Ms. Regino's right to family "integrity" and "association." *Kelson v. City of Springfield*, 767 F.2d 651, 654, 656 n.4 (9th Cir. 1985). This right is based on the "sanctity of the family" and the importance of the emotional "bonds uniting [its] members." *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 503–04 (1977) (plurality op.) This right prohibits "unwarranted interference" into family relationships. *Lee*, 250 F.3d at 686. It arises under both the Fourteenth Amendment, *Moore*, 431 U.S. at 503 n.12 (plurality op.), and the First Amendment, *Bd. of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987).[2]

In the Western tradition, parents' relationships with their children are deeply shaped by whether the child is their "son" or their "daughter." By authorizing the District to socially

---

[2] Even assuming Ms. Regino were required to "careful[ly] descri[ibe]" her Fourteenth Amendment rights under *Glucksberg* (and she is not), there is no such requirement under the First Amendment.

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss       Case No.: 2:23-cv-00032-JAM-DMC

1  transition Ms. Regino's children without her consent, the Policy fundamentally alters the nature

2  of her "emotional bond[s]" with them. *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1021

3  (C.D. Cal. 2000); *see also Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1014 (D. Ariz. 2009).

4  Moreover, the Policy treats Ms. Regino as the enemy, impermissibly driving a "wedge" into the

5  parent-child relationship. (FAC ¶ 50.) *See also Bohn v. Dakota Cnty.*, 772 F.2d 1433, 1436 n.4

6  (8th Cir. 1985); *Patel v. Searles*, 305 F.3d 130, 134, 140 (2d Cir. 2002) (holding acts that created

7  "mistrust among the members of [plaintiff's] family towards him" violated this right). Further, the

8  Policy's secrecy requirement precludes Ms. Regino from even knowing that her daughters are

9  being socially transitioned, thus "depriv[ing her] the opportunity to counter influences" on her

10  children that she disagrees with. *Arnold v. Bd. of Educ. of Escambia Cnty.* 880 F.2d 305, 313 (11th

11  Cir. 1989); *see also Gruenke v. Seip*, 225 F.3d 290, 306 (3d Cir. 2000) (holding school personnel's

12  interference with "management of [] teenage pregnancy" violated right to family integrity).

13      In sum, Ms. Regino has plausibly alleged that she has the right to decide whether the

14  District socially transitions her children. Alternatively, the District must at least provide her notice

15  before doing so. *Hodgson*, 497 U.S. at 483 (discussing parents' "common law right . . . to be

16  notified of their children's actions") (Kennedy, J., concurring in part).

17      **B.  The District's Counterarguments are not Persuasive**

18      The District's counterarguments are without merit:

19      ***First***, the District claims the questions at issue are whether parents have the rights to "know

20  their child's gender identity" and to "compel their own identity preferences upon the child." (Mot.

21  at 12.) This is a strawman. Ms. Regino does not assert that the District must inform her if it merely

22  has *knowledge* that her children are identifying as transgender, nor does this case ask whether her

23  children *generally* must have the gender identity she chooses. Instead, the question is whether *the*

24  *District* must obtain her consent before *it* takes affirmative steps to socially transition her children.

25      ***Second***, the District argues Ms. Regino has no power over medical treatment that her

26  children "voluntarily seek." (Mot. at 14.) According to the District, a five-year old could go to a

27  state-run health clinic complaining of sad thoughts and obtain a Zoloft prescription. That is not

28  the law. Children lack the "maturity, experience, and capacity for judgment" needed to "make

6

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

1  sound judgments concerning . . . their need for medical care." *Parham*, 442 U.S. at 603. Parents

2  thus have the right "to make . . . medical decisions for their children." *Wallis*, 202 F.3d at 1141.

3  This rule protects children from themselves, among other things, and it is not altered "[s]imply

4  because the decision of the parent is not agreeable to [the] child." *Parham*, 442 U.S. at 603.

5        The cases the District cites do not call this rule into question. In *Thomas v. Evansville-*

6  *Vanderburgh School Corporation*, a mother claimed a right to know about "academically oriented

7  conversations" her child had with a school counselor. 258 F. Appx. 50, *54 (7th Cir. 2007). In

8  *Doe v. Irwin*, parents claimed a right to know when a public health clinic distributed birth control

9  to their children. 615 F.2d 1162, 1163 (6th Cir. 1980). In neither of those cases, however, did the

10  courts consider whether the state action at issue—conversations with a school counselor about

11  academics or the distribution of birth control—constituted psychological or medical *treatment*.

12  Here, by contrast, Ms. Regino has squarely made such an allegation. (FAC ¶¶ 2, 5, 43–44, 101.)

13        Moreover, conversations with a school counselor and the distribution of birth control do

14  not impinge upon parents' rights to make important decisions for their children or meddle in the

15  family dynamics in the same way that social transitioning does. And unlike *Thomas* and *Irwin*,

16  the District is accomplishing the social transitioning of children through coercive state power at a

17  public school. Mere conversations with a child and the distribution of birth control at a public

18  health clinic do not involve this level of state control. *Alfonso v. Fernandez*, 606 N.Y.S.2d 259,

19  265–66 (Ct. App. 1993) (distinguishing *Irwin* on this basis).[3]

20        ***Third***, the District contends that Ms. Regino lacks the right to compel it to adhere to her

21  curriculum preferences. (Mot. at 13–14.) But socially transitioning students does not involve the

22  mere "provi[sion] . . . of information" to students. *Fields I*, 427 F.3d at 1206. Moreover, requiring

23  parental consent before socially transitioning students does not implicate the concern that schools

24  could not function if every parent had a "constitutional right . . . to dictate" what their children's

25

26

27  [3] The District asserts that the public health clinic in *Irwin* was operated by a "school." (Mot. at 12,

28  14.) This is wrong. *Irwin*, 615 F.3d at 1168–69.

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss      Case No.: 2:23-cv-00032-JAM-DMC

1   school teaches them. *Id.* Similarly, requiring parental consent does not intrude on schools' ability

2   to "direct *how* a public school teaches their child[ren]." *Parents for Priv. v. Barr*, 949 F.3d 1210,

3   1231 (9th Cir. 2020) (emphasis in original). Social transitioning is not remotely analogous to

4   things like "the hours of the school day," "the timing and content of examinations," or "the

5   extracurricular activities offered at the school." *Id.*

6          In short, the Ninth Circuit has recognized that parents' rights *do not* stop at the schoolhouse

7   door. *Fields II*, 447 F.3d at 1190–91 (deleting language from *Fields I* implying otherwise). Indeed,

8   "[i]t is not educators, but parents who have primary rights in the upbringing of children." *Gruenke*,

9   225 F.3d at 307. By adopting and applying the Policy, the District has overstepped its proper role.

10          ***Fourth***, the District asserts that the right to family association is protected by the

11   Fourteenth Amendment, and not the First. (Mot. at 21.) This is incorrect. While older Ninth Circuit

12   case law noted that the Supreme Court has "most often" invoked the Fourteenth Amendment when

13   discussing this right, *IDK, Inc. v. Cnty. of Clark*, 836 F.2d 1185 (9th Cir. 1988), the Ninth Circuit

14   has never held it arises *only* under the Fourteenth Amendment in the family setting. And more

15   recent cases hold that this right arises under "both the First and Fourteenth Amendments." *Keates*

16   *v. Koile*, 883 F.3d 1228 (9th Cir. 2018); *see also Rotary Club*, 481 U.S. at 545 (observing that "the

17   *First Amendment* protects . . . family relationships") (emphasis added).

18          ***Fifth***, the District argues that the right to family association only (1) forbids "retaliation"

19   and (2) protects the right of parents to "live and / or congregate" with their children. (Mot. at 21.)

20   But as demonstrated, this right protects against actions that impact the "emotional bonds" between

21   parent and child, drive a "wedge" in the family, and "deprive [parents] the opportunity to counter"

22   influences on their children. *Supra* at 5 (collecting cases). The Policy does each of these things.

23      **C.  Strict Scrutiny Applies**

24          The appropriate "level of scrutiny" and "whether the . . . policy can withstand such

25   scrutiny" are both "fact-dependent inquiries that are unsuitable for resolution at the pleading

26   stage." *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1223 (C.D. Cal. 2017). For this

27   reason, the Court should defer these questions until summary judgment. *Id.*

28          If the Court proceeds, strict scrutiny applies. First, strict scrutiny applies to Ms. Regino's

8

First Amendment claims. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *McCabe v. Sharrett*, 12 F.3d 1558, 1566 (11th Cir. 1994) (noting that "burdens on . . . intimate association rights[] are generally subjected to strict scrutiny"). Second, strict scrutiny also applies to Ms. Regino's substantive due process claims. The Supreme Court has held parental rights are "fundamental," which requires the application of strict scrutiny. *Glucksberg*, 521 U.S. at 720–21. Indeed, the Supreme Court has applied strict scrutiny to parental rights in everything but name. *Moore*, 431 U.S. at 499 (holding courts must "examine carefully the importance of the government interests advanced and the extent to which they are served by the challenged regulation") (plurality op.); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (requiring existence of "powerful countervailing interest" and close examination of "whether the means . . . are constitutionally defensible"); *see also Troxel*, 530 U.S. at 80 (Thomas, J., concurring) (applying strict scrutiny by name).

The Ninth Circuit has also applied strict scrutiny in parental rights cases. *Nunez*, 114 F.3d at 952 (evaluating whether "infringement is narrowly tailored to serve a compelling government interest"); *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th Cir. 2012) (requiring existence of "powerful countervailing interest"); *see also LA All. for Hum. Rts. v. City of Los Angeles*, No. LACV2002291DOCKESX, 2021 WL 4713179, at *4 (C.D. Cal. Apr. 26, 2021) ("[R]ights related to the family [are] afforded strict scrutiny."). Other circuit courts agree. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 420 (6th Cir. 2019); *Gruenke*, 225 F.3d at 305–07; *Arnold*, 880 F.2d at 313; *Franz v. United States*, 707 F.2d at 582, 602–03 (D.C. Cir. 1983); *see also Doe v. Heck*, 327 F.3d 492, 519 (7th Cir. 2003) (applying "heightened scrutiny").

The District contends that the "shocks the conscience" test applies, but that test applies only to arbitrary "executive" action. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (high-speed police chase); *see also Brittain v. Hansen*, 451 F.3d 982, 987 (9th Cir. 2006) (aggressive police investigation). Here, Ms. Regino seeks prospective relief against a school policy—which is a "legislat[ive]" enactment—that infringes on her fundamental rights. *Lewis*, 523 U.S. at 846. Thus, strict scrutiny applies. *Id.* (noting that the legal standard differs "depending on whether it is legislation or a specific act of a governmental officer that is at issue"); *see also Hawkins v. Freeman*, 195 F.3d 732, 738–39 (4th Cir. 1999) (explaining difference between

9

---

1  legislative and executive action under *Lewis*); *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th
2  Cir. 1994) (same).

3  **D. The Policy Does Not Satisfy Strict Scrutiny**

4  The District attempts to justify the Policy on the grounds that (1) minor children have a
5  "privacy right" to keep the District's social transitioning of them secret from their parents and (2)
6  the Policy prevents "[child] abuse." (Mot. at 12, 17.) These arguments are without merit.

7  1.  Student privacy from their parents is not a compelling governmental interest.

8  Privacy is not compelling because children have no privacy rights against their parents.

9  ***First***, the Constitution gives heightened protection only to those rights that are "deeply
10  rooted in this Nation's history and tradition and . . . essential to the concept of ordered liberty."
11  *Glucksberg*, 521 U.S. at 720. The District makes no effort to establish that the novel privacy right
12  it is advancing satisfies this standard. Indeed, the District's argument has no historical support
13  whatsoever. *See* Blackstone, 1 *Commentaries on the Laws of England* at 440–41 (recognizing the
14  obligation of children to parental "subjection and obedience"); Kent, 2 *Commentaries* on
15  *American Law* at 207 (providing that children's duties to their parents include "obedience").

16  ***Second***, the District cites cases involving *adults'* rights to keep certain personal
17  information private (Mot. at 12), but those cases did not involve *minor children. Sterling v.*
18  *Borough of Minersville*, 232 F.3d 190, 192 (3d Cir. 2000); *Nelson v. NASA*, 568 F.3d 1028, 1037–
19  38 (9th Cir. 2009) (Wardlaw, J., concurring). "[T]he constitutional rights of children cannot be
20  equated with those of adults." *Bellotti v. Baird*, 443 U.S. 622, 634 (1979), *overruled on other*
21  *grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). Adults have the
22  rights to marry, to engage in consensual sexual relations, and to own a handgun, for example, yet
23  almost every state in the union has laws prohibiting children from engaging in these activities.

24  More importantly, the District is not asking the Court to create some abstract privacy right.
25  Rather, it is asking the Court to create a new privacy right *in children against their parents*.
26  Considering "the peculiar vulnerability of children; their inability to make critical decisions in an
27  informed, mature manner; and the importance of the parental role in child rearing," the Court
28  should be particularly suspicious of arguments that seek to interpose the Constitution between

10

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

children and their parents. *Id.* at 640 (noting that "parental notice and consent are qualifications that typically may be imposed . . . on . . . important decisions" in children's lives). This conclusion is especially true here because of the significant long-term "medical, emotional, and psychological consequences" associated with social transitioning. *H.L. v. Matheson*, 450 U.S. 398, 411 (1981).

The cases requiring a judicial bypass of a parental consent requirement in the abortion context do not help the District either. (Mot. at 14 (citing, *inter alia*, *Bellotti*).) That requirement is no longer good law after *Dobbs*. Moreover, the Supreme Court has only ever required a judicial bypass to a parental consent requirement in the unique context of abortion, where the (former) right must be exercised within the short window of human gestation or lost forever. *Bellotti*, 443 U.S. at 642 ("A pregnant adolescent . . . cannot preserve for long the possibility of aborting, which effectively expires in a matter of weeks from the onset of pregnancy."). The same is not true with social transitioning, which—like most life decisions—minor children can choose when they reach the age of majority. *Id.* (observing that no judicial bypass is required for marriage laws prohibiting minors from marrying because "[a] minor not permitted to marry before the age of majority is required simply to postpone her decision"). Moreover, even before *Dobbs* overruled *Roe v. Wade*, the Supreme Court upheld a parental notice requirement in an abortion statute. *H.L.*, 450 U.S. 398.

**Third**, the District contends that laws requiring parental consent must satisfy strict scrutiny (Mot. at 14, 15), but the case the District cites—*Nunez*—says nothing of the kind. Instead, *Nunez* involved a minor *curfew* ordinance, not a *parental consent* requirement. 114 F.3d at 952. Indeed, the Court in *Nunez* specifically took note of "minors' lack of rights *vis-à-vis [their] parents*." *Id.* at 944–95 (emphasis added). The District's argument that parental consent laws require strict scrutiny is entirely without support and antithetical to our constitutional traditions.

**Fourth**, the additional cases the District cites (Mot. at 12–13) also do not help it. *Thomas* and *Irwin* did not hold that minor children had privacy rights against their parents. Rather, they held that the scope of the *parental right* was not broad enough to be triggered on the unique facts of those cases. *Thomas*, 258 F. Appx. at *54; *Irwin*, 615 F.2d at 1169. Similarly, *John & Jane Parents 1 v. Montgomery County Board of Education* and *Doe v. Manchester School District* did not hold that minor children had privacy rights against their parents. Instead, they rejected the

11

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

argument that the scope of the *parental right* included the "right to be promptly informed of their child's gender identity." *Parents 1*, No. 8:20-3552-PWG, 2022 WL 3544256, at *7 (D. Md. Aug. 18, 2022) (on appeal); *see also Manchester Sch. Dist.*, No. 216-2022-CV-00117, at *5 (N.H. Sup. Ct. Sept. 5, 2022) (similar). As noted, Ms. Regino does not argue she has such a right here.

In the end, the District is able to cite only *one case* holding children have a privacy right against their parents in an arguably analogous situation. *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1191 (C.D. Cal. 2007) (sexual orientation); *see also C.N. v. Wolf*, 410 F. Supp. 2d 894 (C.D. Cal. 2005) (same case). But *Wolf*'s reasoning is hopelessly flawed. It did not consider whether the right it was creating satisfied *Glucksberg*, it did not reason by analogy from any other case involving minor's rights, and it did not evaluate a single parental rights case. Instead, it relied exclusively on *Sterling*, which, as noted, involved adults, not minors. 517 F. Supp. 2d at 1191.

Moreover, under *Wolf*, the right to privacy exists only when a child has a "reasonable expectation" of privacy. *Id.* In *Wolf*, the plaintiff had such an expectation because she had "come out" to only "five friends." *Id.* Here, by contrast, the Policy requires *everyone* in the school environment to refer to students by their new name and pronouns. (FAC Ex. F.) Thus, students have no reasonable expectation that their parents will not learn that the District is socially transitioning them. This is particularly true for Ms. Regino, who "engages with her children's schools to ensure that she is informed about what occurs in their lives." (FAC ¶ 17.)

Finally, *Wolf* concluded that children's privacy rights must yield to a "proper governmental interest." 517 F. Supp. 2d at 1193. Here, Ms. Regino is a fit parent who will do what is in her children's best interests. (FAC ¶¶ 17, 73–74.) Her parental rights thus outweigh any privacy right her children might have against her.

2. The prevention of child abuse is speculative and irrationally overbroad.

Under heightened scrutiny, the Court may look only at the Policy's "actual purpose." *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996). Here, the only "actual purpose" the District invoked was student privacy. Accordingly, the Court should disregard any other purpose.

In any event, the "prevention of child abuse" is irrationally overbroad. The Policy does not require the District to make a finding that students who want to be secretly socially transitioned

12

1    would otherwise be subject to child abuse. Rather, if the child requests secrecy, the Policy provides

2    that secrecy is the rule and disclosure the exception. But the state "has no interest . . . in protecting

3    children from their parents unless it has some reasonable evidence that the parent is unfit and the

4    child is in imminent danger." *Wallis*, 202 F.3d at 1142 n.14; *see also Stanley*, 405 U.S. at 652

5    (holding dependency proceeding unconstitutional that failed to provide "a hearing designed to

6    determine whether the father is unfit"). By presuming parents will harm their children, the Policy

7    impermissibly reverses the constitutionally mandated presumptions of parental fitness and affinity

8    that underlie the parental right. *Parham*, 442 U.S. at 603 (rejecting "statist notion that

9    governmental power should supersede parental authority in *all* cases because *some* parents abuse

10   . . . [their] children") (emphasis in original); *Troxel*, 530 U.S. at 68 (holding unconstitutional state

11   action that contravened presumption of parental fitness) (plurality op.); *Stanley*, 405 U.S. at 652

12   (same); *Heck*, 327 F.3d at 521 (same); *Ricard*, 2022 WL 1471372, at *8 (same).

13       **E.  The Policy Does Not Satisfy any Legal Standard**

14           The Policy does not satisfy any legal standard that might arguably apply. Because Ms.

15   Regino's children have no right to privacy against her, student privacy is not a legitimate

16   government interest. *Supra* at I.D.1. And by assuming that all parents whose children want to be

17   socially transitioned in secret are child abusers, the Policy is irrationally overbroad. *Supra* at I.D.2.

18   Finally, for the same reasons, the Policy is deliberately indifferent to Ms. Regino's rights. *Gantt*

19   *v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013) (noting that deliberate indifference

20   shocks the conscience "[w]here actual deliberation is practical") (cleaned up).

21   **II.    THE POLICY VIOLATES MS. REGINO'S PROCEDURAL RIGHTS**

22           The District does not argue that the Policy's procedures are adequate. Instead, it argues

23   that Ms. Regino has no liberty interest and that procedural due process does not apply because the

24   Policy is a general rule with wide application. (Mot. at 20.) These arguments are meritless.

25       **A.  The Policy Infringes Ms. Regino's Protected Liberty Interests**

26           As discussed, the Policy deprives Ms. Regino of her fundamental rights. That is sufficient

27   to trigger procedural due process. *Mullins v. State of Or.*, 57 F.3d 789, 795 (9th Cir. 1995) (noting

28   that the "procedural component of the Due Process Clause protects . . . fundamental rights"). This

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

1  is true even if the Policy satisfies the applicable substantive standard of review. *United States v.*

2  *Salerno*, 481 U.S. 739, 746 (1987) ("When government action depriving a person of . . . liberty .

3  . . . survives substantive due process scrutiny, it must still be implemented in a fair manner.").

4  Moreover, even if Ms. Regino's parental rights were not "fundamental" (and they are),

5  they would still be closely related enough to fundamental rights that they trigger procedural due

6  process protections. *Kerry v. Din*, 576 U.S. 86, 109–10 (2015) (collecting cases noting existence

7  of nonfundamental liberty interests) (Breyer, J., dissenting); *see also Bustamante v. Mukasey*, 531

8  F.3d 1059, 1062 (9th Cir. 2008) (holding United States citizen "has a protected liberty interest in

9  the visa application of her alien spouse" despite the fact such interest is not fundamental).

10  **B.  The Policy Creates a Procedurally Deficient Adjudicatory Process**

11  A legislative body is typically not required to provide notice and an opportunity to be heard

12  before "adopt[ing]" a generally applicable rule of law through lawful means. *See Bi-Metallic Inv.*

13  *Co. v. State Bd. Of Equalization*, 239 U.S. 441, 445-46 (1915) (emphasis added)); *see also Hotel*

14  *& Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968 (9th Cir. 2003) (rejecting right

15  to "hearing prior to the enactment of [city] ordinances"). When, by contrast, a provision of law

16  creates an "established state procedure" governing case-by-case adjudications, the procedure itself

17  must comply with procedural due process. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432

18  (1982) (holding claim-adjudication process for employee termination procedurally deficient); *see*

19  *also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985) (same); *Stanley*, 405 U.S.

20  at 649 (same for dependency proceeding). The only exception to this rule is for laws that are "self-

21  executing," *Texaco, Inc. v. Short*, 454 U.S. 516, 535 (1982); that is, laws that "uniformly affect[]

22  all similarly situated citizens" immediately upon enactment, *E.E.O.C. v. Pan Am. World Airways,*

23  *Inc.*, 897 F.2d 1499, 1509 (9th Cir. 1990).

24  Here, Ms. Regino does not contend that she was entitled to notice and an opportunity to

25  be heard *before* the Policy went into effect. Rather, she alleges that the Policy's adjudicatory

26  framework is procedurally deficient. (FAC ¶¶ 119–22.) Moreover, the Policy is not "self-

27  executing" because it requires a "case-by-case" adjudication. (FAC Ex. F at 5.) Accordingly, the

28  Court should reject the District's argument that procedural due process does not apply.

14

Plaintiff's Memorandum in
Opposition to Defendant's Motion to Dismiss          Case No.: 2:23-cv-00032-JAM-DMC

1    **III.    THE POLICY IS FACIALLY INVALID**

2    **A.  The Policy is Facially Invalid under *Salerno***

3    The Policy is invalid in all of its applications under *Salerno*. 481 U.S. 739. The District

4    argues the Policy is constitutional where parental disclosure of students' social transition could

5    lead to child abuse (Mot. at 16), but the Policy does not require the District to make a determination

6    that the child is likely to be abused before mandating secrecy. Instead, the District presumes harm

7    based on nothing more than the child's desire for secrecy. (FAC Ex. F at 5.) As a result, the District

8    indiscriminately mandates secrecy regardless of whether the student is any real danger. Because

9    of this structural flaw, the Policy is unconstitutional in all of its applications. *Stanley*, 405 U.S. at

10   654 (holding statute invalid that presumed all unwed fathers were unfit despite the fact some

11   unwed fathers would, in fact, be unfit); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir.

12   2014) (holding statue precluding pre-trial release facially invalid despite the existence of "persons

13   who could be detained consistent with due process under a different categorical statute").

14   **B.  The Policy is Unconstitutionally Overbroad**

15   The overbreadth doctrine applies to Ms. Regino's facial First Amendment claim. *Ams. for*

16   *Prosp. Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021); *Corso v. Fischer*, 983 F.Supp.2d 320, 335

17   (S.D.N.Y. 2013). Under this doctrine, a statute is facially invalid when "a substantial number of

18   its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."

19   *Ams. for Prosp. Found.*, 141 S. Ct. at 2387. The Policy fails this test.

20   The Policy is unconstitutionally overbroad for the same reasons it is facially invalid under

21   *Salerno*. Moreover, even if the Policy did not violate *Salerno* (and it does) the Policy's

22   presumption that all parents of every child who wants to socially transition in secret are abusive

23   would still violate the overbreadth doctrine. The result of that presumption is that parents, most of

24   whom are fit, are kept in the dark simply because some small subset of parents might be abusive.

25   This renders the Policy unconstitutional in "a substantial number of its applications" under the

26   overbreadth doctrine. *Ams. for Prosp. Found.*, 141 S. Ct. at 2387.

27   <u>**CONCLUSION**</u>

28   For the foregoing reasons, the Court should deny the District's Motion to Dismiss.

15

Respectfully submitted,

Dated:  May 9, 2023

**DHILLON LAW GROUP INC.**
**CENTER FOR AMERICAN LIBERTY**

*/s/ Harmeet K. Dhillon*
HARMEET K. DHILLON
MICHAEL A. COLUMBO
JOSHUA W. DIXON
ERIC A. SELL

*Attorneys for Plaintiff*

16

**<u>PROOF OF SERVICE</u>**

I, Harmeet K. Dhillon, hereby certify that on May 9, 2023, I electronically filed the above documents with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

By: *<u>/s/ Harmeet K. Dhillon</u>*

Harmeet K. Dhillon

1