No. 23-16031

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

AURORA REGINO,
Plaintiff – Appellant

v.

KELLY STALEY, Superintendent,
Defendant – Appellee,

and

CAITLIN DALBY; REBECCA KONKIN; TOM LANDO; EILEEN ROBINSON:
MATT TENNIS
Defendants

On Appeal from the United States District Court
for the Eastern District of California
No. 2:23-cv-00032-JAM-DMC
Hon. John A. Mendez

**DEFENDANT-APPELLEE'S PETITION
FOR REHEARING EN BANC**

BRIAN A. DUUS, ESQ. (SBN: 263403)
JIMMIE E. JOHNSON, ESQ. (SBN: 223344)
**LEONE ALBERTS & DUUS, APC**
1390 Willow Pass Road, Suite 700
Concord, CA 94520
Telephone: (925) 974-8600
Facsimile: (925) 974-8601
E-Mail: bduus@leonealberts.com
jjohnson@leonealberts.com

*Attorneys for Defendant-Appellee*
KELLY STALEY

1

# TABLE OF CONTENTS

                                                            **Page(s)**

**TABLE OF AUTHORITIES** ................................................................. ii

**STATEMENT OF REASONS FOR EN BANC REVIEW** ............ 1

**STATEMENT OF CASE** ..................................................................... 2

    A.    The Parties ................................................................................. 2

    B.    Pertinent Legislative Background ............................................. 3

    C.    Pertinent Procedural Background .............................................. 4

**ARGUMENT** ....................................................................................... 8

    A.    A Reviewing Court Must Affirm a District Court Decision on Any Ground Supported in the Record ............................................ 8

    B.    As Correctly Determined by the First Circuit in Foote, No Parental Right Exists to Compel Public Agencies to Provide Parents Information Not Previously Possessed ............................ 9

    C.    As Correctly Determined by the Eleventh Circuit in Littlejohn, Refusing to Disclose the Transgender Status of Students to their Parents Does Not "Shock the Conscience" ................................. 11

    D.    The Legal Arguments Presented by the Parties Do Not Affect the Text of the Pleading ....................................................................... 13

**CONCLUSION** ................................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Arpin v. Santa Clara Valley Transp. Agency,*
   261 F.3d 912, (9th Cir. 2001); .................................................................. 14

*Branch v. Tunnell*,
   14 F.3d 449, (9th Cir. 1994) ..................................................................... 14

*Ecological Rights Found. v. Pacific Lumber Co.,*,
   230 F.3d 1141, 1154 (9th Cir. 2000) ........................................................... 8

*Foote v. Town of Ludlow*,
   2022 U.S. Dist. LEXIS 236102, (D. Mass. Dec. 14, 2022) .................... 9, 12, 13

*Godecke ex rel. United States v. Kinetic Concepts, Inc.*,
   937 F.3d 1201 (9th Cir. 2019) .................................................................... 8

*Lee v. City of Los Angeles*,
   250 F.3d 668, (9th Cir. 2001) ................................................................... 13

*Littlejohn et al. v. Sch. Bd. of Leon Cty., Fla., et al.,*,
   No. 4:21-cv-00415, U.S. Dist. Ct. (N.D. Fla.), May 27, 2022 ..... 1-2, 11, 12, 13

*SEC v. Chenery Corp.*,
   318 U.S. 80, (1943) .................................................................................. 8

**Federal Rules**

F.R.A.P. 40(b)(2)(D) .......................................................................................... 2
F.R.C.P. 12(b)(6) ........................................................................................... 6, 9

**Other**

William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:211 (2024) ................................................... 14

# STATEMENT OF REASONS FOR EN BANC REVIEW

One of the most important and publicly-debated legal questions currently litigated throughout the nation is whether parents[1] have a constitutional right to compel state action in the form of forcing public agencies to disclose the transgender status of their children – i.e., force the government to reveal a person's confidential transgender information, otherwise protected by the privacy rights enshrined in the Constitution of the United States of America, without consent. Indeed, the current President of the United States, Donald J. Trump, has recently injected himself into this legal debate by way of his United States Department of Education investigating the State of California for enacting legislation that shields such sensitive, constitutionally-protected information from unjust parental intrusion. U.S. Department of Education, *U.S. Department of Education Launches Investigation into California Department of Education for Alleged FERPA Violations* (Mar. 27, 2025) (Press Release), https://www.ed.gov/about/news/press-release/us-department-of-education-launches-investigation-california-department-of-education-alleged-ferpa-violations.

During the pendency of the instant appeal, both the United States Court of Appeals for the First Circuit ("First Circuit") in *Foote v. Ludlow School*

---

[1] For the purposes of this petition, any reference by the District to "parents" includes both parents and legal guardians.

1

*Committee*, 128 F.4th 336 (1st Cir. 2025); as well as the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") in *Littlejohn v. School Board of Leon County*, No. 23-10385, 2025 U.S.App. LEXIS 5803 (11th Cir. 2025), __ F.4th __ ; confidently approached this legal question, and correctly determined that parents have no constitutional right to compel such state action. Yet, when the same question was presented to a panel of this Court, the tribunal determined, in a published decision, that the parent plaintiff would first need to plead a more "careful description" of the constitutional right at issue before the federal courts could consider the matter – an opinion not shared by either the First or Eleventh Circuits.

The exceptional, national importance of this constitutional question is undisputed. Indeed, 36 states and the District of Columbia have all submitted amicus briefs in this matter; as have several public policy-focused institutions. Likewise, given the recent imposition of the executive branch into this legal debate, one cannot reasonably deny the need for this Court to follow the First and Eleventh Circuits by making an immediate, definitive decision to protect those states within its jurisdiction who defend the constitutional privacy rights of their students. Accordingly, an en banc rehearing of the matter should be granted pursuant to Federal Rule of Appellate Procedure 40(b)(2)(D).

///

# STATEMENT OF CASE

## A. The Parties

The Chico Unified School District ("District") is a public school district based in Chico, California. Defendant-Appellee KELLY STALEY ("Staley") is the District's Superintendent. ER 52-102 (First Amended Complaint ("FAC"), para. 25).[2]

Plaintiff-Appellant AURORA REGINO ("Regino") is the mother of "A.S." and "C.S.," minor students who attend District schools. ER 54, 56, 63 (FAC, paras. 4, 16, 55).

## B. Pertinent Legislative Background

Similar to most public school districts in California, the District has enacted an administrative regulation addressing equal protection and the privacy rights of transgender students ("AR 5145.3"). As of the 2021-2022 school year at issue in this litigation, AR 5145.3 read, in pertinent part:

> **Transgender and Gender-Nonconforming Students**
> …
> To ensure that transgender and gender-nonconforming students are afforded the same rights, benefits, and protections provided to all students by law and Board policy, *the district shall address each situation on a case-by-case basis, in accordance with the following guidelines:*
>
> 1. Right to privacy: A student's transgender or gender-nonconforming status is the student's private information and *the district shall only*

---

[2] Citations to "ER" are references to the Excerpts of Record, Volume 1 of 1.

> *disclose the information to others with the student's prior written consent, except when the disclosure is otherwise required by law or when the district has compelling evidence that disclosure is necessary to preserve the student's physical or mental well-being.*
> … As appropriate given the student's need for support, the compliance officer may discuss with the student any need to disclose the student's transgender or gender-nonconformity status or gender identity or gender expression to the student's parents/guardians and/or others, including other students, teacher(s), or other adults on campus. The district shall offer support services, such as counseling, to students who wish to inform their parents/guardians of their status and desire assistance in doing so.
> …
> 5. Names and Pronouns: If a student so chooses, *district personnel shall be required to address the student by a name and the pronoun(s) consistent with the student's gender identity*, without the necessity of a court order or a change to the student's official district record. …

SER 94-95 (District Court taking judicial notice), 127, 131-134 (emphasis added).[3]

## C. Pertinent Procedural Background

On April 10, 2023, Regino filed the operative FAC. ER 52-102; SER 84-88.

In pertinent part, the pleading reads:

1. The United States Constitution protects parents' fundamental right to direct and control the upbringing of their children. This right includes the right of parents to direct and control the decision-making process regarding whether a public school will "socially transition" their minor children from one gender to another.

2. "Social transitioning" refers to the active affirmation of a person's transgender identity. In the school setting, it primarily refers to calling the student by a new name associated with their transgender

---

[3] Citations to "SER" are references to the Supplemental Excerpts of Record, Volume 1 of 1.

4

identity and referring to the student by pronouns associated with their transgender identity. … Under the United States Constitution, public schools may not socially transition minors without first informing and receiving consent from their parents.

3. The [District] has adopted an administrative regulation … under which schools in the District will (1) socially transition any student who claims to have a transgender identity and asks to be socially transitioned in the school environment and (2) keep the social transitioning secret from the student's parents unless the student specifically authorizes the school to inform them. Schools in the District are … socially transition[ing] students who assert a transgender identity, all without informing the students' parents or obtaining parental consent. …

…

10. By socially transitioning A.S. without informing Ms. Regino or obtaining her consent, the District violated Ms. Regino's fundamental right to direct and control the upbringing of her child.
…

ER 53-55 (paras. 1-3, 10).

Based upon these allegations, as further detailed throughout the pleading, the FAC raises the following causes of action:

- Count One – 42 U.S.C. § 1983 – Substantive Due Process (Facial Challenge), ER 70-74 (FAC, ¶¶ 99-106);

- Count Two – 42 U.S.C. § 1983 - Substantive Due Process (As Applied Challenge), ER 74-78 (FAC, ¶¶ 107-113);

- Count Three – 42 U.S.C. § 1983 – Procedural Due Process (Facial Challenge), ER 78 (FAC, ¶¶ 114-118);

- Count Four – 42 U.S.C. § 1983 – Procedural Due Process (As Applied Challenge), ER 78-79 (FAC, ¶¶ 119-122);

- Count Five – 42 U.S.C. § 1983 – First Amendment (Facial Challenge), ER 79-80 (FAC, ¶¶ 123-128); and

5

- Count Six – 42 U.S.C. § 1983 – First Amendment (As Applied Challenge), ER 80 (FAC, ¶¶ 129-133).[4]

On April 25, 2023, Staley filed a motion to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ER 30-51. On July 11, 2023, the district court granted the motion with prejudice. ER 4-23.

On July 20, 2023, Regino filed her notice of the instant appeal. ER 253-255. On April 4, 2025, a panel of this Court vacated the district court's order. Op. 9. In doing so, the panel first commented:

> Regino did not precisely identify her asserted fundamental rights in her operative complaint, but she broadly asserted in briefing on the District's motion to dismiss that the Policy infringed: [¶] (i) her right to make medical decisions for her children, (ii) her right to make important decisions in the lives of her children that go to the heart of parental decision-making, and (iii) her right to maintain familial integrity and association.

Op. 17-18. After this initial comment, the panel then determined that the district court employed an incorrect legal analysis when granting the District's motion:

> Here, the district court concluded that Regino failed to adequately allege the existence of a cognizable fundamental right, but failed to conduct the proper analysis. … Because existing precedent did not expressly address Regino's articulation of her asserted fundamental rights, the district court held that the rights she asserted were not fundamental. This was error. We have never held that a plaintiff asserting a substantive due process claim must show that existing precedent clearly establishes the asserted fundamental right, and we see no reason to import this standard now. … [T]he critical inquiry is

---

[4] As noted in the panel opinion, the legal analysis for the particular "familial association" First Amendment claims raised by Regino are the same as those applied to the due process claims. Op. 18 fn. 6.

6

> whether an asserted fundamental right is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed.

Op. 19-20 (grammatical marks and citation omitted).

Finally, acknowledging that both parties had asked this Court to perform its own independent analysis on the question, setting aside any deficiencies within the district court's analysis, the panel declined to do so. The panel contended that such a review was not possible because (1) again, the pleading allegedly did not sufficiently provide a "careful description" of the parental right at issue; and curiously (2) the parties' adapting legal arguments in response to each other's counter arguments somehow affected the panel's ability to read the text of the FAC and determine whether the allegations set forth therein stated facts constituting a claim upon which relief could be granted:

> Having concluded that the district court erred in its analysis, we must decide whether to undertake the proper analysis in the first instance. Both parties urge us to reach the question whether Regino has adequately alleged the infringement of her fundamental rights, but because the parties have failed to consistently articulate the scope of their respective claims and defenses, remand is required. [¶] Regino's characterization of her asserted fundamental rights has shifted over the course of this litigation. … These shifts in position are problematic because they undermine the critical requirement that we begin the substantive due process analysis with a "careful description" of the asserted fundamental right. … Like Regino, Staley has failed to consistently identify the District's justifications for its Policy.

Op. 21-23.

///

# ARGUMENT

## A. A Reviewing Court Must Affirm a District Court Decision on Any Ground Supported in the Record

One of the most basic concepts of appellate review is that "[i]n reviewing decisions of the district court, we may affirm on *any* ground finding support in the record. If the decision below is correct, it *must* be affirmed, even if the district court relied on the wrong grounds or wrong reasoning." *Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1213 (9th Cir. 2019) (emphases added, grammatical marks and citation omitted). "[T]he rule … is one driven by efficiency considerations. Where precisely the same result could have been reached on other grounds apparent from the record, sending the case back to the district court is wasteful both for the courts and for the litigants." *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000). "It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate." *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

Here, as discussed in detail below, both the First and Eleventh Circuits have correctly held, as a matter of law, that parents do not have a constitutional right to compel public agencies to disclose the confidential transgender status information of minors. The sister courts came to this same legal conclusion employing

significantly different analyses from the district court below, as well as from each other. In other words, "all roads lead to Rome," and regardless of which analysis this Court chooses to adopt, it will result in the same legal conclusion that Regino had no constitutional right to compel the District to disclose the transgender information of her child. As such, this Court should affirm the ultimate decision of the district court to grant the District's motion to dismiss with prejudice – even if the district court employed incorrect reasoning when doing so.

**B.    As Correctly Determined by the First Circuit in *Foote*, No Parental Right Exists to Compel Public Agencies to Provide Parents Information Not Previously Possessed**

In *Foote*, the Ludlow School Committee ("Ludlow") instituted a protocol similar to AR 5145.3 requiring its staff to use a student's requested name and gender pronouns without notifying their parents absent student consent. 128 F.4th at 340-44. Similar to the instant action, parents of a Ludlow student filed a civil action challenging the constitutionality of the protocol, alleging, "[b]y engaging in 'social transitioning' with children, as provided in the Protocol, Defendants are 'implementing a psychosocial treatment…' without the knowledge or consent of parents. … Plaintiffs' constitutionally protected right to direct the upbringing of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly concealing information and purposefully deceiving Plaintiffs in accordance with and through implementation of the

Protocol." *Id.* at 344; Amend. Compl. *Foote et al. v. Town of Ludlow, et al.*, No. 3:22-cv-30041, U.S. Dist. Ct. (D. Mass.), Jun. 21, 2022 (ECF 22) (paras. 43, 184; footnote omitted). Finally, similar to this matter, the district court in *Foote* granted with prejudice a Rule 12(b)(6) motion filed by the defendant public agency. 128 F.4th at 344.

Having no trouble distilling from the pleading a sufficient, careful description that the purported parental right in question was "to control the upbringing, custody, education and medical treatment of their child," 128 F.4th at 347, the First Circuit noted that "[w]hen we drill down on the Supreme Court's teachings, we observe that the Supreme Court's parental rights cases have never described an asserted right by reference to the specific conduct at issue. … Rather, in each of those decisions, the Court instead considered whether the conduct at issue fell within the broader, well-established parental right to direct the upbringing of one's child. [¶] We necessarily follow that approach in the instant matter and thus decline to define the right at issue with microscopic granularity." *Id.* at 348 (citations omitted). Taking this approach, the *Foote* court then found that the protocol did not infringe upon any fundamental rights of parents. Specifically, the First Circuit determined that (1) the purported "social transitioning" of acknowledging a student's preferred names and pronouns did not constitute medical treatment for which parental consent may otherwise be

necessary; (2) the protocol constituted a school curriculum and/or administrative decision for which parents had no constitutional right to influence; and (3) withholding information from parents that they did not previously posses did not constitute a deprivation of life, liberty, or property without due process of law – i.e., there is no constitutional due process right to compel state action to provide information not previously possessed. *Id.* at 348-56. Finally, determining that the protocol was a broadly-applicable, legislative act that did not infringe upon a fundamental right, the *Foote* court determined that the regulation was only subject to rational basis review – which it satisfied. *Id.* at 345-47, 356-57.

This *Foote* analysis, even though not employed by the district court itself, constitutes a valid, alternative ground for which the granting of the District's motion to dismiss should be affirmed.

**C.    As Correctly Determined by the Eleventh Circuit in *Littlejohn*, Refusing to Disclose the Transgender Status of Students to their Parents Does Not "Shock the Conscience"**

In *Littlejohn*, the school board of Leon County, Florida ("Leon County") published a support guide similar to AR 5145.3 directing its employees to use a student's requested name and gender pronouns without notifying parents absent student consent. 2025 U.S.App. LEXIS 5803, *5-8. Similar to the instant action, parents of a Leon County student filed a civil action challenging the constitutionality of the guide, alleging, "Plaintiffs bring this action to vindicate

11

their fundamental rights to direct the upbringing of their children and to make medical and mental health care decisions for their children as established by the United States and Florida constitutions. … Defendants violated Plaintiffs' fundamental rights by developing a Transgender Support Guide that authorized staff to create covert gender affirmation plans that excluded parents from being informed of and participating in critical decisions affecting their child's mental, emotional, and physical health…." *Id.* at *8-11; Amend. Compl. *Littlejohn et al. v. Sch. Bd. of Leon Cty., Fla., et al.*, No. 4:21-cv-00415, U.S. Dist. Ct. (N.D. Fla.), May 27, 2022 (ECF 38) (paras. 1-2). Finally, similar to this matter, the district court in *Littlejohn* granted with prejudice a Rule 12(b)(6) motion filed by the defendant public agency. 2025 U.S.App. LEXIS 5803, *10-11.

Having no trouble distilling from the pleading a sufficient, careful description that the purported parental right in question was "to make decisions concerning the care custody, and control of their children," 2025 U.S.App. LEXIS 5803, *11 (grammatical marks omitted), the Eleventh Circuit assumed *arguendo* that the plaintiffs invoked a fundamental right because, unlike *Foote*, the *Littlejohn* court considered the guidance an executive act rather than a legislative one – focusing upon its specific application to the minor in question, rather than its general enactment. *Id.* at *13-23. Given this difference, the Eleventh Circuit then examined whether the guidance "shocked the conscience," and found that it did

not. *Id.* at *23-28. "[E]ven where a student *dies*, school officials' behavior does not 'shock the conscience' if it is no more than reckless or deliberately indifferent. Rather, something more is required, like 'malicious' conduct, or 'obviously excessive' force. We do not have to fix the precise height of that bar to conclude that the Littlejohns' allegations do not clear it. … The child was not physically harmed, much less permanently so. Defendants did not remove the Littlejohns' child from their custody. And Defendants did not force the child to attend a Student Support Plan meeting, to not invite the Littlejohns to that meeting, or to socially transition at school. In fact, Defendants did not force the Littlejohns' child to do anything at all. And perhaps most importantly, Defendants did not act with intent to injure. To the contrary, they sought to help the child. Under these circumstances, even if the Littlejohns felt that Defendants' efforts to help their child were misguided or wrong, the mere fact that the school officials acted contrary to the Littlejohns' wishes does not mean that their conduct 'shocks the conscience' in a constitutional sense." *Id.* at *26-27 (emphasis in original, grammatical marks and citations omitted). Finally, determining that the parents had failed to satisfy the "shock the conscience" standard for due process claims concerning executive actions, the Eleventh Circuit affirmed that the motion to dismiss was properly granted. *Id.* at *28.

Similar to *Foote*, this *Littlejohn* analysis, even though not adopted by the

district court itself, constitutes a valid, alternative ground for which the granting of the District's motion to dismiss should be affirmed.

**D.    The Legal Arguments Presented by the Parties Do Not Affect the Text of the Pleading**

Finally, it is well-established in the Ninth Circuit that when considering a Rule 12(b)(6) motion, a trial court must limit its review to the four corners of the operative complaint, and may not consider facts presented in briefs, oral arguments or extrinsic evidence. "[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (grammatical marks and citation omitted); see also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:211 (2024) (The court "cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials).") "[E]xtraneous evidence should not be considered in ruling on a motion to dismiss." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); see also *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (excluding material outside the pleadings from consideration on a Rule 12(b)(6) motion to dismiss).

To that end, as it concerns the instant matter, whether or not defendant Staley "failed to consistently identify the District's justifications for [AR 5145.3]" – a fact that would constitute extraneous evidence outside of the pleadings, those

public policy considerations have no bearing on whether plaintiff Regino pled sufficient facts within the FAC to raise a valid cause of action.  Likewise, whether Regino herself vacillated on the legal arguments/legal conclusions she proffered to the Court in defense of her pleadings has no bearing on whether the actual allegations raised in the FAC text were sufficient.

In short, the panel was not justified in refusing to perform its mandatory duty of rendering a substantive decision on a question of law based upon the clear and undisputed record presented – especially given the national importance and urgency for a definitive decision on this constitutional question.

## CONCLUSION

For the reasons set forth above, the Court should grant an en banc rehearing in this matter.

DATED:  April 18, 2024 /s/ Jimmie E. Johnson
JIMMIE E. JOHNSON
*Attorneys for Defendant-Appellee*
KELLY STALEY

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 35(b)(2)(A) and Ninth Circuit Rules 35-4(a) and 40-1(a) because, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 3,558 words.

This petition also complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(c)(2) and Ninth Circuit Rules 35-4(a) and 40-1(a), and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(6) and 32(c)(2) and Ninth Circuit Rules 35-4(a) and 40-1(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.